**EXHIBIT C**

SMALL BUSINESS ADMINISTRATION

[Docket Number SBA-2020-0021]

13 CFR Parts 120 and 121

RIN 3245-AH37

**Business Loan Program Temporary Changes; Paycheck Protection Program –**

**Requirements – Promissory Notes, Authorizations, Affiliation, and Eligibility**

**AGENCY:**  U. S. Small Business Administration.

**ACTION:**  Interim Final Rule.

**SUMMARY:**  On April 2, 2020, the U.S. Small Business Administration (SBA) posted an interim final rule (the First PPP Interim Final Rule) announcing the implementation of sections 1102 and 1106 of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act or the Act).  Section 1102 of the Act temporarily adds a new program, titled the "Paycheck Protection Program," to the SBA's 7(a) Loan Program.  Section 1106 of the Act provides for forgiveness of up to the full principal amount of qualifying loans guaranteed under the Paycheck Protection Program (PPP).  The PPP is intended to provide economic relief to small businesses nationwide adversely impacted by the Coronavirus Disease 2019 (COVID-19).  SBA posted additional interim final rules on April 3, 2020 and April 14, 2020.  This interim final rule supplements the previously posted interim final rules with additional guidance.  This interim final rule supplements SBA's implementation of section 1102 and 1106 of the Act and requests public comment.

DATES: Effective Date: This rule is effective [INSERT DATE OF PUBLICATION IN THE FEDERAL REGISTER].

1

Applicability Date: This interim final rule applies to applications submitted under the Paycheck Protection Program through June 30, 2020, or until funds made available for this purpose are exhausted.

Comment Date: Comments must be received on or before [INSERT DATE 30 DAYS AFTER DATE OF PUBLICATION IN THE FEDERAL REGISTER].

ADDRESSES: You may submit comments, identified by number SBA-2020-0021 through the Federal eRulemaking Portal: http://www.regulations.gov.  Follow the instructions for submitting comments.  SBA will post all comments on www.regulations.gov.  If you wish to submit confidential business information (CBI) as defined in the User Notice at www.regulations.gov, please send an email to ppp-ifr@sba.gov.  Highlight the information that you consider to be CBI and explain why you believe SBA should hold this information as confidential.  SBA will review the information and make the final determination whether it will publish the information.

FOR FURTHER INFORMATION CONTACT:  A Call Center Representative at 833-572-0502, or the local SBA Field Office; the list of offices can be found at https://www.sba.gov/tools/local-assistance/districtoffices.

SUPPLEMENTARY INFORMATION:

I.     Background Information

On March 13, 2020, President Trump declared the ongoing Coronavirus Disease 2019 (COVID-19) pandemic of sufficient severity and magnitude to warrant an emergency declaration for all States, territories, and the District of Columbia.  With the COVID-19 emergency, many small businesses nationwide are experiencing economic hardship as a direct result of the Federal, State, tribal, and local public health measures that are being

taken to minimize the public's exposure to the virus. These measures, some of which are government-mandated, are being implemented nationwide and include the closures of restaurants, bars, and gyms. In addition, based on the advice of public health officials, other measures, such as keeping a safe distance from others or even stay-at-home orders, are being implemented, resulting in a dramatic decrease in economic activity as the public avoids malls, retail stores, and other businesses.

On March 27, 2020, the President signed the Coronavirus Aid, Relief, and Economic Security Act (the CARES Act or the Act) (Pub. L. 116-136) to provide emergency assistance and health care response for individuals, families, and businesses affected by the coronavirus pandemic. The Small Business Administration (SBA) received funding and authority through the Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency. Section 1102 of the Act temporarily permits SBA to guarantee 100 percent of 7(a) loans under a new program titled the "Paycheck Protection Program." Section 1106 of the Act provides for forgiveness of up to the full principal amount of qualifying loans guaranteed under the Paycheck Protection Program.

II.     Comments and Immediate Effective Date

The intent of the Act is that SBA provide relief to America's small businesses expeditiously. This intent, along with the dramatic decrease in economic activity nationwide, provides good cause for SBA to dispense with the 30-day delayed effective date provided in the Administrative Procedure Act. Specifically, it is critical to meet lenders' and borrowers' need for clarity concerning program requirements as rapidly as

3

possible because the last day eligible borrowers can apply for and receive a loan is June 30, 2020.

This interim final rule supplements previous regulations and guidance on several important, discrete issues. The immediate effective date of this interim final rule will benefit lenders so that they can swiftly close and disburse loans to small businesses. This interim final rule is effective without advance notice and public comment because section 1114 of the Act authorizes SBA to issue regulations to implement Title I of the Act without regard to notice requirements. This rule is being issued to allow for immediate implementation of this program. Although this interim final rule is effective immediately, comments are solicited from interested members of the public on all aspects of the interim final rule, including section III below. These comments must be submitted on or before [INSERT DATE 30 DAYS AFTER DATE OF PUBLICATION IN THE FEDERAL REGISTER]. SBA will consider these comments and the need for making any revisions as a result of these comments.

    III.    Paycheck Protection Program Requirements for Promissory Notes, Authorizations, Affiliation, and Eligibility

*Overview*

The CARES Act was enacted to provide immediate assistance to individuals, families, and organizations affected by the COVID-19 emergency. Among the provisions contained in the CARES Act are provisions authorizing SBA to temporarily guarantee loans under the Paycheck Protection Program (PPP). Loans under the PPP will be 100 percent guaranteed by SBA, and the full principal amount of the loans and any accrued interest may qualify for loan forgiveness. Additional information about the PPP

4

is available in the First PPP Interim Final Rule (85 FR 20811), a second interim final rule (85 FR 20817) (the Second PPP Interim Final Rule), and a third interim final rule (the Third PPP Interim Final Rule) (85 FR 21747) (collectively, the PPP Interim Final Rules).

1. ***Requirements for Promissory Notes and Authorizations***

   This guidance is substantively identical to previously posted FAQ guidance.

   a. *Are lenders required to use a promissory note provided by SBA or may they use their own?*

   Lenders may use their own promissory note or an SBA form of promissory note. *See* FAQ 19 (posted April 8, 2020).

   b. *Are lenders required to use a separate SBA Authorization document to issue PPP loans?*

   No.  A lender does not need a separate SBA Authorization for SBA to guarantee a PPP loan.  However, lenders must have executed SBA Form 2484 (the Lender Application Form - Paycheck Protection Program Loan Guaranty)[1] to issue PPP loans and receive a loan number for each originated PPP loan.  Lenders may include in their promissory notes for PPP loans any terms and conditions, including relating to amortization and disclosure, that are not inconsistent with Sections 1102 and 1106 of the CARES Act, the PPP Interim Final Rules and guidance, and SBA Form 2484.  *See* FAQ 21 (posted April 13, 2020).  The decision not to require a separate SBA Authorization in order to ensure that critical PPP loans are disbursed as efficiently as practicable.

---

[1] This requirement is satisfied by a lender when the lender completes the process of submitting a loan through the E-Tran system; no transmission or retention of a physical copy of Form 2484 is required.

5

### *2. Clarification Regarding Eligible Businesses*

a. *Is a hedge fund or private equity firm eligible for a PPP loan?*

No. Hedge funds and private equity firms are primarily engaged in investment or speculation, and such businesses are therefore ineligible to receive a PPP loan. The Administrator, in consultation with the Secretary, does not believe that Congress intended for these types of businesses, which are generally ineligible for section 7(a) loans under existing SBA regulations, to obtain PPP financing.

b. *Do the SBA affiliation rules prohibit a portfolio company of a private equity fund from being eligible for a PPP loan?*

Borrowers must apply the affiliation rules that appear in 13 CFR 121.301(f), as set forth in the Second PPP Interim Final Rule (85 FR 20817). The affiliation rules apply to private equity-owned businesses in the same manner as any other business subject to outside ownership or control.[2] However, in addition to applying any applicable affiliation rules, all borrowers should carefully review the required certification on the Paycheck Protection Program Borrower Application Form (SBA Form 2483) stating that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."

c. *Is a hospital owned by governmental entities eligible for a PPP loan?*

A hospital that is otherwise eligible to receive a PPP loan as a business concern or nonprofit organization (described in section 501(c)(3) of the Internal Revenue Code of 1986 and exempt from taxation under section 501(a) of such Code) shall

---

[2] However, the Act waives the affiliation rules if the borrower receives financial assistance from an SBA-licensed Small Business Investment Company (SBIC) in any amount. This includes any type of financing listed in 13 CFR 107.50, such as loans, debt with equity features, equity, and guarantees. Affiliation is waived even if the borrower has investment from other non-SBIC investors.

6

not be rendered ineligible for a PPP loan due to ownership by a state or local government if the hospital receives less than 50% of its funding from state or local government sources, exclusive of Medicaid.

The Administrator, in consultation with the Secretary, determined that this exception to the general ineligibility of government-owned entities, 13 CFR 120.110(j), is appropriate to effectuate the purposes of the CARES Act.

d. Part III.2.b. of the Third PPP Interim Final Rule (85 FR 21747, 21751) is revised to read as follows:

*Are businesses that receive revenue from legal gaming eligible for a PPP Loan?*
A business that is otherwise eligible for a PPP Loan is not rendered ineligible due to its receipt of legal gaming revenues, and 13 CFR 120.110(g) is inapplicable to PPP loans. Businesses that received illegal gaming revenue remain categorically ineligible. On further consideration, the Administrator, in consultation with the Secretary, believes this approach is more consistent with the policy aim of making PPP loans available to a broad segment of U.S. businesses.

3. ***Business Participation in Employee Stock Ownership Plans***

*Does participation in an employee stock ownership plan (ESOP) trigger application of the affiliation rules?*

No. For purposes of the PPP, a business's participation in an ESOP (as defined in 15 U.S.C. § 632(q)(6)) does not result in an affiliation between the business and the ESOP. The Administrator, in consultation with the Secretary, determined that this is appropriate given the nature of such plans. Under an ESOP, a business concern contributes its stock (or money to buy its stock or to pay off a loan that

7

was used to buy stock) to the plan for the benefit of the company's employees. The plan maintains an account for each employee participating in the plan. Shares of stock vest over time before an employee is entitled to them. However, with an ESOP, an employee generally does not buy or hold the stock directly while still employed with the company. Instead, the employee generally receives the shares in his or her personal account only upon the cessation of employment with the company, including retirement, disability, death, or termination.

4. ***Eligibility of Businesses Presently Involved in Bankruptcy Proceedings***

   *Will I be approved for a PPP loan if my business is in bankruptcy?*

   No. If the applicant or the owner of the applicant is the debtor in a bankruptcy proceeding, either at the time it submits the application or at any time before the loan is disbursed, the applicant is ineligible to receive a PPP loan. If the applicant or the owner of the applicant becomes the debtor in a bankruptcy proceeding after submitting a PPP application but before the loan is disbursed, it is the applicant's obligation to notify the lender and request cancellation of the application. Failure by the applicant to do so will be regarded as a use of PPP funds for unauthorized purposes.

   The Administrator, in consultation with the Secretary, determined that providing PPP loans to debtors in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans. In addition, the Bankruptcy Code does not require any person to make a loan or a financial accommodation to a debtor in bankruptcy. The Borrower Application Form for PPP loans (SBA Form 2483), which reflects this restriction in the form of a

borrower certification, is a loan program requirement. Lenders may rely on an applicant's representation concerning the applicant's or an owner of the applicant's involvement in a bankruptcy proceeding.

5. *Limited Safe Harbor with Respect to Certification Concerning Need for PPP Loan Request*

Consistent with section 1102 of the CARES Act, the Borrower Application Form requires PPP applicants to certify that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant." Any borrower that applied for a PPP loan prior to the issuance of this regulation and repays the loan in full by May 7, 2020 will be deemed by SBA to have made the required certification in good faith.

The Administrator, in consultation with the Secretary, determined that this safe harbor is necessary and appropriate to ensure that borrowers promptly repay PPP loan funds that the borrower obtained based on a misunderstanding or misapplication of the required certification standard.

6. *Additional Information*

SBA may provide further guidance, if needed, through SBA notices that will be posted on SBA's website at www.sba.gov. Questions on the Paycheck Protection Program may be directed to the Lender Relations Specialist in the local SBA Field Office. The local SBA Field Office may be found at https://www.sba.gov/tools/local-assistance/districtoffices.

**Compliance with Executive Orders 12866, 12988, 13132, 13563, and 13771, the Paperwork Reduction Act (44 U.S.C. Ch. 35), and the Regulatory Flexibility Act (5 U.S.C. 601-612).**

Executive Orders 12866, 13563, and 13771

This interim final rule is economically significant for the purposes of Executive Orders 12866 and 13563, and is considered a major rule under the Congressional Review Act.  SBA, however, is proceeding under the emergency provision at Executive Order 12866 Section 6(a)(3)(D) based on the need to move expeditiously to mitigate the current economic conditions arising from the COVID-19 emergency.  This rule's designation under Executive Order 13771 will be informed by public comment.

Executive Order 12988

SBA has drafted this rule, to the extent practicable, in accordance with the standards set forth in section 3(a) and 3(b)(2) of Executive Order 12988, to minimize litigation, eliminate ambiguity, and reduce burden.  The rule has no preemptive or retroactive effect.

Executive Order 13132

SBA has determined that this rule will not have substantial direct effects on the States, on the relationship between the National Government and the States, or on the distribution of power and responsibilities among the various layers of government. Therefore, SBA has determined that this rule has no federalism implications warranting preparation of a federalism assessment.

Paperwork Reduction Act, 44 U.S.C. Chapter 35

SBA has determined that this rule will not impose new or modify existing recordkeeping or reporting requirements under the Paperwork Reduction Act.

Regulatory Flexibility Act (RFA)

The Regulatory Flexibility Act (RFA) generally requires that when an agency issues a proposed rule, or a final rule pursuant to section 553(b) of the APA or another law, the agency must prepare a regulatory flexibility analysis that meets the requirements of the RFA and publish such analysis in the Federal Register. 5 U.S.C. 603, 604. Specifically, the RFA normally requires agencies to describe the impact of a rulemaking on small entities by providing a regulatory impact analysis. Such analysis must address the consideration of regulatory options that would lessen the economic effect of the rule on small entities. The RFA defines a "small entity" as (1) a proprietary firm meeting the size standards of the Small Business Administration (SBA); (2) a nonprofit organization that is not dominant in its field; or (3) a small government jurisdiction with a population of less than 50,000. 5 U.S.C. 601(3)–(6). Except for such small government jurisdictions, neither State nor local governments are "small entities." Similarly, for purposes of the RFA, individual persons are not small entities. The requirement to conduct a regulatory impact analysis does not apply if the head of the agency "certifies that the rule will not, if promulgated, have a significant economic impact on a substantial number of small entities." 5 U.S.C. 605(b). The agency must, however, publish the certification in the Federal Register at the time of publication of the rule, "along with a statement providing the factual basis for such certification." If the agency head has not waived the requirements for a regulatory flexibility analysis in accordance with the RFA's waiver provision, and no other RFA exception applies, the agency must prepare the regulatory flexibility analysis and publish it in the Federal Register at the time of promulgation or, if the rule is promulgated in response to an emergency that makes

timely compliance impracticable, within 180 days of publication of the final rule.  5 U.S.C. 604(a), 608(b).  Rules that are exempt from notice and comment are also exempt from the RFA requirements, including conducting a regulatory flexibility analysis, when among other things the agency for good cause finds that notice and public procedure are impracticable, unnecessary, or contrary to the public interest.  SBA Office of Advocacy guide: How to Comply with the Regulatory Flexibility Act, Ch.1. p.9.  Accordingly, SBA is not required to conduct a regulatory flexibility analysis.


**Jovita Carranza,**
*Administrator.*