**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>**PENOBSCOT VALLEY HOSPITAL,**<br><br>Debtor. | **Chapter 11**<br><br>**Case No. 19-10034** |
| **PENOBSCOT VALLEY HOSPITAL,**<br><br>Plaintiff,<br><br>v.<br><br>**JOVITA CARRANZA, in her capacity as Administrator for the U.S. Small Business Administration,**<br><br>Defendants. | **Adversary No. 20-1005** |

**EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND REQUEST FOR HEARING DATE AND BRIEFING SCHEDULE WITH RESPECT TO THE DEBTOR'S REQUEST FOR A PRELIMNARY INJUNCTION**

Penobscot Valley Hospital (the "Debtor" or "PVH"), the debtor and debtor-in-possession in the above-captioned chapter 11 case, requests entry of a temporary restraining order consistent with the form of order filed with this Motion. In summary terms, the Debtor seeks entry of an order that would enjoin the United States Small Business Administration (the "SBA") acting through Jovita Carranza (the "Administrator"), in her capacity as the Administrator of the SBA (the "Administrator"), and all those acting in concert with the Administrator, from:

(A) Denying or causing a commercial lender to deny an application of the Debtor under the Paycheck Protection Program ("PPP") on the basis that the applicant is a debtor in bankruptcy or based on the words "or presently in bankruptcy" on the

    Administrator's PPP application form;

(B) Refusing to guaranty a forgivable PPP Loan sought by the Debtor on the basis that the applicant is a debtor in bankruptcy or because of a "yes" in response to Question 1 on the official form of application for PPP; and

(C) Authorizing, guarantying, or disbursing funds appropriated for loans under PPP without reserving sufficient funds or guaranty authority to provide the Debtor with access to PPP funds if the Debtor is eligible once the words "or presently in bankruptcy" are stricken from the official PPP application form.

  The Debtor further requests that the temporary restraining order remain in effect for no fewer than 14 calendar days and that the Court set an expedited hearing and briefing schedule with respect to the Debtor's request for a preliminary injunction substantially similar to the temporary restraining order requested by this Motion.

## JURISDICTION, VENUE, AND STATUTORY BASIS FOR RELIEF

  1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(B), and the District of Maine Local Rule of Civil Procedure 83.6, pursuant to which all cases under title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and all proceedings arising in or related to cases arising under the Bankruptcy Code are automatically referred to this Court.

  2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

  3. This matter is a core proceeding. 28 U.S.C. § 157(b)(2).

  4. This Motion is brought pursuant to Rule 65 of the Federal Rules of Bankruptcy Procedure, which is applicable to this adversary proceeding pursuant of Rule 7065 of the Federal Rules of Bankruptcy Procedure.

5. The Debtor consents to entry of final orders by this Court in this adversary proceeding.

## GENERAL BACKGROUND

6. On January 29, 2019 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code and commenced the above-captioned chapter 11 case now pending before this Court.

7. No trustee has been appointed in the Debtor's chapter 11 case.

8. The Debtor continues to operate its business as a debtor-in-possession.

9. On March 19, 2020, the Debtor filed its Status Report Regarding Potential Case Impact Of Covid-19 And Request For Status Conference (the "Status Report") in its pending chapter 11 case. The Status Report was filed at Docket Entry 287 in Case No. 19-10034. It is incorporated by reference here.

10. A significant portion of the Debtor's revenue is derived from outpatient procedures. Based on recommendations from the federal Centers for Disease Control and the State of Maine, the Debtor discontinued non-essential medical procedures and office visits. This has had a significant negative impact on the Debtor's cash position.

11. On or about March 27, 2020, Congress enacted and the President signed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act").

12. The CARES Act included stimulus funds designed to assist businesses and ensure that American workers continue to be paid despite the economic impact of Covid-19 and social distancing measures.

13. Section 1102 of the CARES Act establishes PPP as a convertible loan program under § 7(a) of the Small Business Act, codified in 15 U.S.C § 636. While nominally called a

3

"loan," PPP disbursements are treated as grants—and there are no repayment obligations—if, among other things, 75% of PPP funds are used for payroll and wage expenses.

14. A party can obtain funds under PPP by applying with any federally insured participating lender using an application form created by SBA, and SBA guaranties the loan.

15. On or about April 2, 2020, SBA released forms of applications for PPP.

16. Even though § 1102 of the CARES Act does not prohibit extending funds under PPP to a chapter 11 debtor, the PPP application form asks whether "the Applicant . . . [is] presently involved in any bankruptcy" and then goes on to state that answering "yes" to that question means a request for PPP funds will not be approved.

17. On April 3, 2020, the Debtor submitted an application (the "Application") for PPP funds to its commercial lender, Machias Savings Bank. A copy of the Application is attached as **Exhibit A**.[1]

18. The Debtor sized its request for PPP funds to ensure that the funds would be treated as a grant and be forgivable. To the extent any portion of the funds requested by the Debtor would exceed the amount to be forgiven, the Debtor intends to immediately repay that amount.

19. On April 8, 2020, Machias Savings Bank sent an e-mail (the "MSB E-mail") to SBA requesting guidance on processing the Debtor's application in light of the Debtor answering "yes" to question 1 on the application. A copy of the MSB E-mail is attached to the Complaint as **Exhibit B** and incorporated by reference herein.

20. In the MSB E-mail, Machias Savings Bank presented the following question to SBA: "Please look at the attached application [from the Debtor]. From everything that I know, we shouldn't proceed entering this inter ETRAN because the customer is ineligible based on how

---

[1] The Debtor has submitted a revised application to reflect the number of its employees rather than full-time equivalents.

4

question 1 was answered.  Let me know how to proceed with this one."

21. In response, SBA sent an e-mail (the "SBA E-mail") to Machias Savings Bank stating as follows: "You are correct.  If a business answers yes to that question they are ineligible, so they have declared themselves ineligible."  A copy of the SBA E-mail is included in **Exhibit B** and incorporated by reference herein.

22. PPP funds are available on a first come, first served basis.  The Debtor's Application was not processed, and the Debtor did not receive funds prior to their exhaustion under the first tranche of PPP funding.

23. Subsequently, on or about April 23, 2020, Congress enacted legislation making additional funds available for PPP.

24. The Debtor is an eligible borrower under PPP and seeks to ensure adequate funds are available under this second tranche of PPP funding once its discrimination claim under § 525(a) of the Bankruptcy Code is resolved and the Debtor's request for PPP funding is processed and the deadline for any and all administrative and judicial remedies has expired.

25. The Debtor understands that Machias Savings Bank is willing to advance funds through PPP if the Application (or a subsequently amended application) can be processed and approved as meeting SBA's requirements.

26. On April 24, 2020, SBA proposed an interim final rule (the "April 24 Rule") with respect to PPP that states "[i]f the applicant or the owner of the applicant is the debtor in a bankruptcy proceeding, either at the time it submits the application or at any time before the loan is disbursed, the applicant is ineligible to receive a PPP loan."  The stated basis for this rule is that the Administrator "determined that providing PPP loans to debtors in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans."

27. A copy of this interim final rule, which has not yet been adopted, is attached as **Exhibit C**.

28. This interim final rule had not been proposed at the time the Debtor submitted its Application or when SBA directed Machias Savings Bank not to process the Application. An interim final rule proposed on April 15, 2020 (the "April 15 Rule") stated that "[t]he program requirements of the PPP identified in this rule temporarily supersede any conflicting Loan Program Requirement (as defined in 13 CFR 120.10)." The April 15 Rule contained no exclusion for debtors.

29. On April 22, 2020, the Debtor filed revised cash projections (the "Cash Plan") with respect to a request for authority to use property that may be cash collateral. The Cash Plan is filed at Docket Entry 317 in Case No. 19-10034. The Cash Plan and the related statement at Docket Entry 317 are incorporated by reference herein.

30. The Debtor projects that it will run out of money to pay ongoing expenses by the middle of June if it is unable to obtain funds from PPP or other sources. This would result in the Debtor being forced to immediately close its business without sufficient funds for an orderly wind-down. This would cause irreparable harm to the Debtor.

31. On or about the same date that this Motion was filed, the Debtor filed a verified Complaint against the Administrator seeking preliminary and permanent injunctions and declaratory relief. The contents of the Complaint are incorporated by reference herein. The Debtor's chief executive officer, Crystal Landry, signed the verification included with the Complaint.

32. On the same date that this Motion was filed, the Debtor served a copy of the Complaint and this Motion on the Administrator, her deputy director for the District of Maine, and

the federal government as follows:

>Ms. Jovita Carranza
>U.S. Small Business Administration
>409 3rd Street S.W.
>Washington, D.C. 20416
>
>Attn: Civil Process Clerk
>Office of the U.S. Attorney
>District of Maine
>100 Middle Street, East Tower, 6th Floor
>Portland, ME 04101
>
>Attorney General
>Attn: Civil Process
>U.S. Department of Justice
>950 Pennsylvania Avenue, N.W.
>Washington, D.C. 20530-0001

33. Additionally, a copy of the Complaint and this Motion were sent by e-mail to the following individuals by e-mail:

>Ms. Dominique V. Sinesi
>Commercial Litigation Branch
>Civil Division
>U.S. Department of Justice
>dominique.sinesi@usdoj.gov
>
>James D. Concannon
>Assistant United States Attorney
>District of Maine
>james.concannon@usdoj.gov
>
>Ms. Diane L. Sturgeon
>Deputy District Director
>Maine District Office
>U.S. Small Business Administration
>diane.sturgeon@sba.gov

## **RELIEF REQUESTED**

34. The Debtor requests entry of a temporary restraining order granting the relief requested in the form of order filed with this Motion and as described in the introductory paragraph

7

to this Motion. This relief is requested pursuant to Rule 65 of the Federal Rules of Civil Procedure, which is applicable to this adversary proceeding pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure.

## **BASIS FOR RELIEF**

35. Under Rule 65 of the Federal Rules of Civil Procedure, the Court has authority to issue a temporary restraining order until such time as a hearing can be held on a motion for a preliminary injunction.

36. The court may issue a temporary restraining order on an *ex parte* basis if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1); Fed. R. Bankr. P. 7065.

37. Rule 65(b)(2) provides as follows:

Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record.

38. The standards for issuing a temporary restraining order are the same as those that the Court must apply when determining whether to grant a preliminary injunction. *Monga v. Nat'l Endowment for Arts*, 323 F.Supp.3d 75, 82 (D. Me. 2018); *Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor, Inc.*, 564 F.Supp.2d 63, 66 (D. Me. 2008).

39. Thus the Court must consider, and the Debtor bears the burden to demonstrate, that the following four factors weigh in the Debtor's favor: (1) the likelihood of success on the merits;

8

(2) the potential for irreparable harm to the Debtor if the temporary restraining order is denied; (3) the balance between the hardship to the Administrator if the temporary restraining order is granted contrasted with the hardship to the Debtor if no injunction issues; and (4) the effect (if any) of the Court's ruling on the public interest. *Monga*, 323 F.Supp.3d at 82.

40. Each of these factors weighs in favor of the Debtor and granting the temporary restraining order requested by this Motion.

    A.    **The Likelihood Of Success On The Merits**

41. The first factor the Court must consider is the likelihood that the Debtor will be successful on the merits.

42. The gravamen of the Debtor's Complaint is that the Administrator has impermissibly exceeded the scope of her authority and is violating § 525(a) of the Bankruptcy Code by excluding debtors from participating in PPP, a forgivable loan program. Nothing in the CARES Act mandates or authorizes exclusion of debtors from PPP—and, in the absence of clear legislative intent to exclude debtors, the only conclusion to draw from the bankruptcy text on the PPP application form or the related provision in the April 24 Rule is that the Administrator is discriminating against debtors.

43. This is clear from a review of the CARES Act. Congress established PPP by enacting § 1102 of the CARES Act. In so doing, PPP was created as a forgivable loan program under § 7(a) of the Small Business Act—but it is functionally a grant.[2] There is absolutely nothing in § 1102 of the CARES Act or elsewhere in that legislation prohibiting debtors from accessing funds under PPP. Similarly, there is nothing in the Small Business Act prohibiting debtors from

---

[2] There are no underwriting requirements other than reviewing the contents of the application form. Creditworthiness or collateral are irrelevant. In fact, as long as the borrower uses loan proceeds in the prescribed manner—75% to payroll costs—the loan is forgivable and there is no debt obligation.

borrowing funds guaranteed by SBA.

44.     In contrast, the CARES Act contains many amendments to federal bankruptcy law and specifically excludes debtors from certain borrowing programs—but not PPP.

45.     For example, the CARES Act contains three important amendments to the Bankruptcy Code: First, § 1113 of the CARES Act temporarily increased debt limits for small business debtors under Subchapter V of chapter 11. Second, § 1103(3) of the CARES Act specifically provided that the increased debt limits only applied "to cases commenced . . . on or after the date of enactment of this Act." Third, § 1113(b) made certain revisions to, among other things, "disposable income" to make clear that an individual debtor under chapter 13 would not be required to add CARES Act benefits to "current monthly income," but did not provide the same benefit to Subchapter V debtors.

46.     Moreover, § 4003 of the CARES Act establishes a lending program under which the Secretary of the Treasury (not SBA) can provide direct loans to certain businesses. Congress expressly excluded debtors from this borrowing program by enacting § 4003(c)(3)(D)(i)(V) of the CARES Act. This provision requires borrowers for these loans to certify that "the recipient is not a debtor in a bankruptcy proceeding[,]" **The CARES Act does not contain a similar requirement for PPP.**[3]

47.     The point is this: Congress knew when and how to alter the rights of debtors under the CARES Act but chose not to do so with respect to PPP. Despite this, the Administrator has decided—without any basis in law—that anyone "presently involved in any bankruptcy" must be

---

[3]     By inference, the CARES Act also excludes debtors from being able to participate in payment deferments available to borrowers of loans guaranteed by SBA. Section 1112(c)(1) of the CARES Act provides that the Administrator shall pay all debt service for SBA guaranteed loans for a six month period, but only for loans in "regular servicing status[,]" which, by implication, would exclude debtors that are not current on debt service payments. Nothing in the portion of the CARES Act enacting PPP could be read to include a similar exclusion.

excluded from PPP, when there is likely greater oversight of bankruptcy debtors and how PPP funds would be used than non-debtors. Senator Angus King has submitted a letter to the Administrator echoing the Debtor's position. A copy of this letter is attached hereto as **Exhibit D**. While not dispositive of Congressional intent, it is notable that the Senator's position does not conflict with the one advanced by the Debtor.

48. As of this filing, at least one bankruptcy court has granted a TRO in favor of an ambulance company debtor that was denied access to funds under PPP—and similar requests are pending before different bankruptcy courts. *Hidalgo County Emergency Service Foundation v. Carranza*, Adv. No. 20-2006, Docket Entry 11 (Bankr. S.D. Tex. Apr. 24, 2020) (minute entry granting temporary restraining order and denying an oral motion for a stay pending appeal). A copy of the *Hidalgo* Court's temporary restraining order, entered at Docket Entry 18 of that matter, is attached as **Exhibit E**.

49. An order has not yet entered in that case, but minutes from a hearing before the *Hidalgo* Court indicate that "[f]or the reasons stated on the record, the Court will grant the Temporary Restraining Order (TRO). . . . The Defendants [sic] oral motion for stay pending appeal has been denied." *Id.* A jointly filed proposed order granting the temporary restraining order is located at Docket Entry 16 of that matter but had not been entered as of this filing.

50. A copy of a transcript of the hearing at which the *Hildago* Court granted a temporary restraining order is attached as **Exhibit F**. Based on the transcript, the *Hildago* Court made clear that the Administrator's application form violates § 525(a) and discriminates against debtors:

> It's entirely inappropriate that those words [or presently involved in any bankruptcy] were added into that form in that list in that manner. And I see no authority anywhere for including those words in that form. It serves no purpose. I do find that by including the words "or presently involved in any bankruptcy," they

11

are intended to be discriminatory. They are intended to be discriminatory toward debtors for reasons offered that somehow we lose control of the money, again I find that to be completely frivolous. I cannot imagine anything less controlling than to simply give out money with no underwriting, with no oversight, and then complain that if I have a [f]ederal judge who makes sure that the debtor complies with the law, ensures that the debtors file monthly operating reports, ensure that copies of bank statements are filed on the docket every month, that they somehow lost control. I simply don't buy it. I find the arguments to lack any good faith.

**Exhibit F**, p. 31-32, lines 16-6.

51. In response to the Administrator's argument that 15 U.S.C. § 634(b)(1) limited the availability of injunctive relief against the Administrator, the *Hidalgo* Court determined that could grant the temporary restraining order to remedy a clear violation of § 525(a) of the Bankruptcy Code. *See* **Exhibit F**, p. 31, lines 7-20. The court was not ordering the Administrator to issue or guaranty a loan—just to remedy a clear violation of § 525(a). Thus the court construed § 634(b)(1) narrowly in order to harmonize it with § 525(a). To do otherwise, would have left the court powerless to stop SBA from discriminating against a debtor on the basis of its bankruptcy filing.[4]

52. In fashioning appropriate relief, the *Hidalgo* Court enjoined not only the Administrator, but also all those acting in concert with her, including the debtor's commercial lender, given the Administrator's concession that lenders are assisting with the implementation of PPP. *See* Fed. R. Civ. P. 65(d)(2)(C). Thus the court directed that the debtor submit its PPP application and that the application be considered without the words "or presently involved in any bankruptcy" being considered. "They are stricken from consideration. The application shall be considered on its merits and in accordance with the law with those six words stricken." **Exhibit F**, p. 33, lines 3-6. The Debtor seeks similar relief.

  **B.** **The Potential For Irreparable Harm To The Debtor**

---

[4] The Court has authority to grant relief similar to an injunction against the Administrator pursuant to 28 U.S.C. § 1361. The Court should not elevate form over substance given that the Debtor does not seek to have the Court order the Administrator to issue or guaranty a loan that Congress has not authorized.

53. The next factor also weighs in favor of granting the Motion. The record before the Court in the Debtor's chapter 11 case is clear. Significant portions of the Debtor's operating revenue have disintegrated due to the fact that non-essential procedures, including office visits and outpatient procedures, have been canceled or rescheduled at the request of the state and federal governments. In the absence of another source of liquidity, the Debtor is weeks away from running out of money. This could lead to the need for an immediate shutdown without the financial resources needed for an orderly liquidation. This would irreparably harm the Debtor and its reorganization. In contrast, if the Debtor is able to obtain funds under PPP, along with a normalization of revenue and federal stimulus funds, then the Debtor remains optimistic that it can weather this storm and continue its reorganization.

54. In good times, critical access hospitals tend to have small operating margins—at times slightly positive and at other times slightly negative. They provide needed health care services in rural communities where patient volume is generally law but hospital services are needed in case of an emergency. We are now in that emergency. Even if there is not a widespread outbreak of Covid-19 in the Debtor's service area, the Debtor must continue to remain open to provide needed health care services in its community.

C. **The Balance Of Hardships**

55. The balance of hardships also favors the Debtor. In this case, the risk to the Administrator if the temporary restraining order is granted is low—or perhaps nonexistent. The Administrator has exceeded her statutory authority and is violating § 525(a) of the Bankruptcy Code. There is no harm to her from requiring her to implement PPP without any discrimination to the Debtor and to have the Debtor's Application (or any amended application) processed if the Debtor would otherwise qualify for PPP. Indeed, Congress has given the Court authority to order

13

executive branch officers to fulfill their duties, and the Debtor has requested that the Court do so in Count IV of its Complaint. 28 U.S.C. § 1361.

56. Congress created PPP to help businesses struggling with survival due to Covid-19—and, simply put, the Debtor's survival is on the line. If the temporary restraining order is not granted, then there is a significant and material risk that the second tranche of PPP funding will be exhausted in a matter of days—even before the Court holds a hearing on a preliminary injunction.

57. The Debtor has satisfied this element.

### D. The Effect On The Public Interest

58. This element also favors the Debtor. The public interest is protected by ensuring that the Debtor has funds to pay payroll expenses and to continue to operate during the Covid-19 pandemic. This serves several important public interests: (1) Congressional policy favors reorganization; (2) the Debtor is one of the largest private sector employers in its area—and ensuring that its workers continue to receive paychecks is consistent with the public interest underlying enactment of the CARES Act and PPP; (3) as of right now, we are in a period of time without a vaccine, widespread testing, or known therapeutics for Covid-19, and the public interest is best served by ensuring hospital services continue to be available to the Lincoln area; and (4) economic development in the Lincoln area, which has already been hit hard by a recent mill closure, would likely stall, perhaps irrevocably, if the Debtor were to close.

### NO BOND IS REQUIRED

59. Due to the nature of this request, no bond is required. Fed. R. Bankr. P. 7065.

### EX PARTE RELIEF

60. The Debtor submits that it has satisfied the elements of Rule 65(b)(1) of the Federal Rules of Civil Procedure such that relief can be granted ex parte. However, the Debtor has served

a copy of the Complaint and this Motion as set forth in paragraph 33 above.  The Debtor requests that the Court find such notice adequate under the circumstances and due to the limited nature of the relief requested.  Fed. Bankr. P. 2002(m).

## **CONCLUSION**

The Debtor requests that the Court enter an order (1) granting this Motion, (2) entering a temporary restraining order in a form substantially similar to the form of order filed with this Motion, (3) setting a hearing date and briefing schedule for a hearing with respect to a preliminary injunction, and (4) granting such further relief as the Court deems proper.

Date: April 27, 2020                 /s/ Andrew C. Helman
Andrew C. Helman
Kelly W. McDonald
Katie M. Krakowka
Sage Friedman
MURRAY, PLUMB & MURRAY
75 Pearl Street, P.O. Box 9785
Portland, Maine  04104-5085
(207) 773-5651

Attorneys For Penobscot Valley Hospital