# **<u>EXHIBIT 1</u>**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>**PENOBSCOT VALLEY HOSPITAL,**<br><br>Debtor. | **Chapter 11**<br><br>**Case No. 19-10034** |
| **PENOBSCOT VALLEY HOSPITAL,**<br><br>Plaintiff,<br><br>v.<br><br>**JOVITA CARRANZA, in her capacity as Administrator for the U.S. Small Business Administration,**<br><br>Defendants. | **Adversary No. 20-_____** |

## COMPLAINT

Penobscot Valley Hospital (the "Debtor" or "PVH"), the debtor and debtor-in-possession in the above-captioned chapter 11 case, complains against the United States Small Business Administration (the "SBA") acting through Jovita Carranza (the "Administrator"), in her capacity as the Administrator of the SBA (the "Administrator"), as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(B), and the District of Maine Local Rule of Civil Procedure 83.6, pursuant to which all cases under title 11 of the United States Code (the "Bankruptcy Code") and all proceedings arising in or related to cases arising under the Bankruptcy Code are automatically referred to this Court.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      This matter is a core proceeding.  28 U.S.C. § 157(b)(2).

4.      The Debtor consents to entry of final orders by this Court in this adversary proceeding.

## PARTIES

5.      The Debtor is a non-profit Maine business corporation located in Lincoln, Maine. The Debtor operates a critical access hospital.

6.      The Administrator can sue and be sued on behalf of SBA in any court of general jurisdiction. 15 U.S.C. § 634(b).

## GENERAL BACKGROUND

7.      On January 29, 2019 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code and commenced the above-captioned chapter 11 case now pending before this Court.

8.      No trustee has been appointed in the Debtor's chapter 11 case.

9.      The Debtor continues to operate its business as a debtor-in-possession.

10.      On March 19, 2020, the Debtor filed its Status Report Regarding Potential Case Impact Of Covid-19 And Request For Status Conference (the "Status Report") in its pending chapter 11 case.  The Status Report was filed at Docket Entry 287 in Case No. 19-10034.  It is incorporated by reference here.

11.      A significant portion of the Debtor's revenue is derived from outpatient procedures. Based on recommendations from the federal Centers for Disease Control and the State of Maine, the Debtor discontinued non-essential medical procedures and office visits.  This has had a significant negative impact on the Debtor's cash position.

12.     On or about March 27, 2020, Congress enacted and the President signed the Coronavirus Aid, Relief, and Economic Security Act (the "<u>CARES Act</u>").

13.     The CARES Act included stimulus funds designed to assist businesses and ensure that American workers continue to be paid despite the economic impact of Covid-19 and social distancing measures.

14.     Section 1102 of the CARES Act establishes the Paycheck Protection Program ("<u>PPP</u>") as a convertible loan program under § 7(a) of the Small Business Act, codified in 15 U.S.C § 636.  While nominally called a "loan," PPP disbursements are treated as grants—and there are no repayment obligations—if, among other things, 75% of PPP funds are used for payroll and wage expenses.

15.     A party can obtain funds under PPP by applying with any federally insured participating lender using an application form created by SBA, and SBA guaranties the loan.

16.     On or about April 2, 2020, SBA released forms of applications for PPP.  Other than filling out the official form of application, there is no underwriting, and the Administrator is relying upon assistance of commercial lenders acting in concert with SBA to administer PPP.

17.     Even though § 1102 of the CARES Act does not prohibit extending funds under PPP to a chapter 11 debtor, the PPP application form asks whether "the Applicant . . . [is] presently involved in any bankruptcy" and then goes on to state that answering "yes" to that question means a request for PPP funds will not be approved.

18.     On April 3, 2020, the Debtor submitted an application (the "<u>Application</u>") for PPP funds to its commercial lender, Machias Savings Bank.  A copy of the Application is attached as **<u>Exhibit A</u>**.

19.     The Debtor sized its request for PPP funds to ensure that the funds would be treated

3

as a grant and be forgivable.  To the extent any portion of the funds requested by the Debtor would

exceed the amount to be forgiven, the Debtor intends to immediately repay that amount.

20.     On April 8, 2020, Machias Savings Bank sent an e-mail (the "MSB E-mail") to

SBA requesting guidance on processing the Debtor's application in light of the Debtor answering

"yes" to question 1 on the application.  A copy of the MSB E-mail is attached to the Complaint as

**Exhibit B** and incorporated by reference herein.

21.     In the MSB E-mail, Machias Savings Bank presented the following question to

SBA: "Please look at the attached application [from the Debtor].  From everything that I know, we

shouldn't proceed entering this inter ETRAN because the customer is ineligible based on how

question 1 was answered.  Let me know how to proceed with this one."

22.     In response, SBA sent an e-mail (the "SBA E-mail") to Machias Savings Bank

stating as follows: "You are correct.  If a business answers yes to that question they are ineligible,

so they have declared themselves ineligible."  A copy of the SBA E-mail is included in **Exhibit B**

and incorporated by reference herein.

23.     PPP funds are available on a first come, first served basis.  The Debtor's

Application was not processed, and the Debtor did not receive funds prior to their exhaustion under

the first tranche of PPP funding.

24.     Subsequently, on or about April 23, 2020, Congress enacted legislation making

additional funds available for PPP.

25.     The Debtor is an eligible borrower under PPP and seeks to ensure adequate funds

are available under this second tranche of PPP funding once its discrimination claim under § 525(a)

of the Bankruptcy Code is resolved.

26.     The Debtor understands that Machias Savings Bank is willing to advance funds

through PPP if the Application (or a subsequently amended application) can be processed and approved as meeting SBA's requirements.

27.    On April 24, 2020, SBA proposed an interim final rule (the "April 24 Rule") with respect to PPP that states "[i]f the applicant or the owner of the applicant is the debtor in a bankruptcy proceeding, either at the time it submits the application or at any time before the loan is disbursed, the applicant is ineligible to receive a PPP loan." The stated basis for this rule is that the Administrator "determined that providing PPP loans to debtors in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans."

28.    A copy of this interim final rule, which has not yet been finally adopted, is attached as **Exhibit C**.

29.    This interim final rule had not been proposed at the time the Debtor submitted its Application or when SBA directed Machias Savings Bank not to process the Application. An interim final rule proposed on April 15, 2020 (the "April 15 Rule") stated that "[t]he program requirements of the PPP identified in this rule temporarily supersede any conflicting Loan Program Requirement (as defined in 13 CFR 120.10)." The April 15 Rule contained no exclusion for debtors.

30.    On April 22, 2020, the Debtor filed revised cash projections (the "Cash Plan") with respect to a request for authority to use property that may be cash collateral. The Cash Plan is filed at Docket Entry 317 in Case No. 19-10034. The Cash Plan and the related statement at Docket Entry 317 are incorporated by reference herein.

31.    The Debtor projects that it will run out of money to pay ongoing expenses by the middle of June if it is unable to obtain funds from PPP or other sources. This would result in the Debtor being forced to immediately close its business without sufficient funds for an orderly wind-

down.  This would cause irreparable harm to the Debtor.

## COUNT I

### (Preliminary and Permanent Injunction)

32.     The Debtor incorporates the allegations of each of the prior paragraphs as if set forth fully herein.

33.     The Debtor is entitled to seek relief against the Administrator and all those acting in concert with her under Rule 65 of the Federal Rules of Civil Procedure, which is applicable to this action pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure.

34.     There is no prohibition in the CARES Act or under § 7(a) of the Small Business Act prohibiting lending to debtors.

35.     Moreover, the CARES Act specifically waives all underwriting considerations under § 7(a) of the Small Business Act.

36.     The Debtor is likely to prevail on the merits of its claim for an injunction as well as for declaratory relief.

37.     The balance of hardships favors issuance of preliminary injunctive relief.  The inability to obtain PPP funds could cause the Debtor to suffer immediate and irreparable harm by forcing the Debtor to liquidate.  Preliminary and permanent injunctive relief while this matter is pending will not harm the Defendant.

38.     The Debtor seeks an order enjoining SBA or any commercial lender provided notice of the Court's order, *see* Fed. R. Civ. P. 65(d)(2)(C), from denying an application under PPP on the basis that the applicant is a debtor in bankruptcy and requiring that an application of the Debtor to participate in PPP be considered without the words "or presently involved in any bankruptcy" being considered.

39.     Due to the "first come, first served" nature of PPP appropriations, the Debtor further

seeks an order enjoining SBA from issuing loan guaranties or approving PPP applications in an

amount that would leave insufficient funds for the Debtor's funding pursuant to the Application

(or any subsequent application filed shortly hereafter) until the Debtor's claims in this Complaint

are resolved.

## COUNT II

### (Declaratory Relief)

40.     The Debtor incorporates each of the prior paragraphs as if set forth fully herein.

41.     The Debtor is entitled to seek declaratory relief pursuant to 28 U.S.C. § 2201 and

Rule 7001(9) of the Federal Rules of Bankruptcy Procedure.

42.     Neither the CARES Act nor the Small Business Act prohibit disbursements under

PPP to the Debtor based on its status as a debtor under chapter 11 of the Bankruptcy Code.

43.     The Debtor has a legal right to apply for funds under PPP and to have its

Application (or any amended application) considered on the same terms as other applicants without

regard to its status as a debtor under chapter 11 of the Bankruptcy Code.

44.     By prohibiting Machias Savings Bank from processing the Application, and by

prohibiting disbursements to debtors under PPP, the Administrator has exceeded her statutory

authority.

45.     The Debtor is entitled to a declaratory judgment that the CARES Act requires its

Application to be considered on the same terms as other qualified businesses that are not presently

debtors in cases arising under the Bankruptcy Code.

## COUNT III

### (11 U.S.C. § 525(a))

46.     The Debtor incorporates each of the prior paragraphs as if set forth fully herein.

47.     Section 525(a) of the Bankruptcy Code prohibits the federal government from discriminating against a person based on that person's status as a debtor with respect to a "license, permit, charter, franchise, or other similar grant[.]"

48.     The Debtor is a debtor in a case under chapter 11 of the Bankruptcy Code.

49.     PPP constitutes a federal program within the meaning of § 525(a) of the Bankruptcy Code in that the program is designed to provide forgivable loans to qualified businesses that are akin to grants.

50.     The Debtor is a small business within the meaning of the CARES Act and is eligible to participate in funding of forgivable loans, which are functionally grants, under PPP.

51.     The Debtor has, in fact, sized its PPP funding request to be forgivable and, to the extent any funds would not qualify for forgiveness, intends to immediately repay (and there is no prepayment penalty under PPP).

52.     The SBA E-mail, bankruptcy-related question on the Application, and the April 24 Rule demonstrate that SBA has violated § 525(a) of the Bankruptcy Code with respect to the Debtor.

53.     SBA has violated § 525(a) of the Bankruptcy Code for the reasons stated in this Complaint.

## COUNT IV

### (Mandamus – 28 U.S.C. § 1361)

54.     The Debtor incorporates each of the prior paragraphs as if set forth fully herein.

55.     The Administrator has a duty to implement the laws enacted by Congress.  This non-discretionary duty includes implementing PPP in a manner that does not violate § 525(a) of the Bankruptcy Code.

56.     The Administrator breached this duty.

57.     The Debtor has the right to have an application for funds pursuant to PPP considered without discrimination based on the Debtor's status as a bankruptcy debtor.

58.     The Administrator has no discretion to discriminate against the Debtor based on its status as a debtor in bankruptcy.

59.     Upon information and belief, there are no administrative remedies available to the Debtor at this time.  The Debtor has based this belief upon communications with staff for one of its members of Congress who advised the Debtor that the SBA has taken the position that there is no administrative waiver process with respect to PPP.

## **RELIEF REQUESTED**

With respect to **Count I**, the Debtor seeks the following relief:

(A)     A preliminary injunction enjoining SBA or any commercial lender from denying an application under PPP on the basis that the applicant is a debtor in bankruptcy or because of the words "or presently in bankruptcy" on the Administrator's PPP application.  The Debtor requests that this relief be granted under such time as a final judgment is entered on its claims in Count II, Count III, and Count IV;

(B)     A preliminary injunction enjoining SBA from issuing loan guaranties or approving PPP applications in an amount that would leave insufficient funds for the Debtor's funding pursuant to the Application (or any amended application) until entry of final judgment on the Debtor's Claims in Count II, Count III, and Count IV; and

(C)     Permanent injunctive relief with respect to the relief in the two immediately
        preceding sub-paragraphs.

With respect to **Count II**, the Debtor seeks the following relief:

(A)     That the Court enter a declaratory judgment that the CARES Act does not prohibit
        the Application from being considered on the same terms as other qualified
        business that are not debtors in cases arising under the Bankruptcy Code and which
        are also seeking PPP funding.

With respect to **Count III**, the Debtor seeks the following relief:

(A)     A determination that SBA has violated § 525(a) of the Bankruptcy Code with
        respect to the Debtor's Application; and

(B)     A determination that SBA has violated § 525(a) of the Bankruptcy Code by issuing
        its interim final rule on April 24, 2020, and promulgating a PPP application form
        excluding debtors.

(C)     Damages in an amount not less than $1.4 million the event that the Court does not
        grant the relief requested in Count I on a temporary or preliminary basis and it is
        later determined that the Debtor was eligible for PPP funds but none remain
        available.

With respect to **Count IV**, the Debtor seeks the following relief:

(A)     Entry of judgment directing the Administrator to process any application of the
        Debtor under PPP without discriminating against the Debtor based on its status as
        a debtor in bankruptcy.

(B)     Damages in an amount not less than $1.4 million the event that the Court does not
        grant the relief requested in Count I on a temporary or preliminary basis and it is

later determined that the Debtor was eligible for PPP funds but none remain

available.

With respect to Count I, Count II, Count III, and Count IV, the Debtor requests that it be

awarded attorneys' fees and costs pursuant to 28 U.S.C. 2412(b).

Date: April 27, 2020        /s/ Andrew C. Helman
                        Andrew C. Helman
                        Kelly W. McDonald
                        Katie M. Krakowka
                        Sage Friedman
                        MURRAY, PLUMB & MURRAY
                        75 Pearl Street, P.O. Box 9785
                        Portland, Maine  04104-5085
                        (207) 773-5651

                        Attorneys For Penobscot Valley Hospital

## **VERIFICATION**

I, Crystal Landry, am the chief executive officer of Penobscot Valley Hospital and declare

under penalty of perjury under the laws of the United States of America that the allegations in

paragraphs 5, 6, 7, 8, 9, 10, 11, 12, 13, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 30, 31, 58, and 59 of

the foregoing Complaint are true and accurate, to the best of my knowledge and belief, and, if not

based on my own personal knowledge, that I believe such allegations to be true and correct.

Date: April 27, 2020        /s/ Crystal Landry

11

**EXHIBIT A**



# Paycheck Protection Program
## Borrower Application Form

OMB Control No.: 3245-0407
Expiration Date: 09/30/2020

| Check One: | ☐ Sole proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☐ LLC<br>☐ Independent contractor ☐ Eligible self-employed individual<br>■ 501(c)(3) nonprofit ☐ 501(c)(19) veterans organization<br>☐ Tribal business (sec. 31(b)(2)(C) of Small Business Act) ☐ Other | DBA or Tradename if Applicable |
|---|---|---|

| Business Legal Name | | |
|---|---|---|
| Penobscot Valley Hospital | | |

| Business Address | Business TIN (EIN, SSN) | Business Phone |
|---|---|---|
| 7 Transalpine Road<br><br>Lincoln, ME  04457 | 010545327 | 2077943321 |
| | Primary Contact | Email Address |
| | Crystal Landry | clandry@pvhme.org |

| Average Monthly Payroll: | $ 593,004 | x 2.5 + EIDL, Net of Advance (if Applicable) Equals Loan Request: | $ 1,482,510 | Number of Employees: | 119.4 |
|---|---|---|---|---|---|

Purpose of the loan (select more than one): ■Payroll ☐Lease / Mortgage Interest ■Utilities ■Other (explain): Rents

## Applicant Ownership

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN) | Address |
|---|---|---|---|---|
| | | | | |
| | | | | |

*If questions (1) or (2) below are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | ■ | ☐ |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government? | ☐ | ■ |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as addendum A. | ■ | ☐ |
| 4. Has the Applicant received an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | ☐ | ■ |

*If questions (5) or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?<br>Initial here to confirm your response to question 5 → CL | ☐ | ■ |
| 6. Within the last 5 years, for any felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)?<br>Initial here to confirm your response to question 6 → CL | ☐ | ■ |
| 7. Is the United States the principal place of residence for all employees of the Applicant included in the Applicant's payroll calculation above? | ■ | ☐ |
| 8. Is the Applicant a franchise that is listed in the SBA's Franchise Directory? | ☐ | ■ |

1

SBA Form 2483 (04/20)



**Paycheck Protection Program**
**Borrower Application Form**

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

CERTIFICATIONS AND AUTHORIZATIONS

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any loan received by the Applicant under Section 7(b)(2) of the Small Business Act between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses loans under the Paycheck Protection Program Rule.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

CERTIFICATIONS

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

_CL_   The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

_CL_   Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

_CL_   The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

_CL_   The Applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan.

_CL_   I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs.

_CL_   During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.

_CL_   I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

_CL_   I acknowledge that the lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

_Crystal Landry_ _____     04/03/2020
Signature of Authorized Representative of Applicant          Date

**Crystal Landry**                                          **CEO**
Print Name                                                  Title

2

SBA Form 2483 (04/20)



**Paycheck Protection Program**
**Borrower Application Form**

<u>Purpose of this form:</u>

This form is to be completed by the authorized representative of the Applicant and *submitted to your SBA Participating Lender.* Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

<u>Instructions for completing this form:</u>

With respect to "purpose of the loan," payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating "Average Monthly Payroll," most Applicants will use the average monthly payroll for 2019, excluding costs over $100,000 on an annualized basis for each employee. For seasonal businesses, the Applicant may elect to instead use average monthly payroll for the time period between February 15, 2019 and June 30, 2019, excluding costs over $100,000 on an annualized basis for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis for each employee.

If Applicant is refinancing an Economic Injury Disaster Loan (EIDL): Add the outstanding amount of an EIDL made between January 31, 2020 and April 3, 2020, less the amount of any "advance" under an EIDL COVID-19 loan, to Loan Request as indicated on the form.

All parties listed below are considered owners of the Applicant as defined in 13 CFR § 120.10, as well as "principals":

- For a sole proprietorship, the sole proprietor;

- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;

- For a corporation, all owners of 20% or more of the corporation;

- For limited liability companies, all members owning 20% or more of the company; and

- Any Trustor (if the Applicant is owned by a trust).

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to : Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416., and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503.

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 USC Section 636(a)(1)(B) of the Small Business Act (the Act).

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is the disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Act using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) foreclose on collateral or take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial

3

SBA Form 2483 (04/20)



## Paycheck Protection Program
### Borrower Application Form

institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – Subject to certain exceptions, SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that will be automatically released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers (and their officers, directors, stockholders or partners), the collateral pledged to secure the loan, the amount of the loan, its purpose in general terms and the maturity. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined, forced to cease operations, or prevented from starting operations. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549; (2 CFR Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

4

SBA Form 2483 (04/20)

**EXHIBIT B**

# Andrew C. Helman

| | |
|---|---|
| **From:** | Jeremy R. Fischer <JFischer@dwmlaw.com> |
| **Sent:** | Thursday, April 9, 2020 9:23 AM |
| **To:** | Andrew C. Helman |
| **Subject:** | FW: Penobscot Valley Hospital -- ETRAN  HELP |

Andrew,

Please see below.  The SBA has effectively declined Penobscot Valley Hospital's application and instructed Machias Savings not to upload it to the ETRAN system because PVH is ineligible.

Jeremy

**Jeremy R. Fischer**
Attorney

207.253.0569 Direct
JFischer@dwmlaw.com

84 Marginal Way, Suite 600, Portland, ME 04101-2480
800.727.1941 | 207.772.3627 Fax | **dwmlaw.com**



*The information transmitted herein is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Unintended transmission shall not constitute waiver of any privilege, including, without limitation, the attorney-client privilege if applicable.  Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited.  If you received this in error, please contact the sender and delete the e-mail and any attachments from any computer.*

---

 **From:** Sturgeon, Diane L. <Diane.Sturgeon@sba.gov>
**Sent:** Wednesday, April 08, 2020 3:56 PM
**Subject:** RE: Penobscot Valley Hospital -- ETRAN HELP


You are correct. If a business answers yes to that question they are ineligible, so they have declared themselves ineligible.  I also think their employment number is off.  It's not FTE --- it's employees & I doubt they have a .4 person working for them…

Diane L. Sturgeon
Deputy District Director
Maine District Office
**U.S. Small Business Administration**
(207) 622-8286
Cell (207) 632-0754
diane.sturgeon@sba.gov



Home Page |Twitter | Instagram | Facebook | YouTube | LinkedIn | Email Alerts

Small Business Clients: Please take a few moments to tell us how we are doing at www.sba.gov/feedback

**Sent:** Wednesday, April 8, 2020 1:57 PM
**To:** Sturgeon, Diane L. <Diane.Sturgeon@sba.gov>
**Subject:** FW: Penobscot Valley Hospital -- ETRAN HELP

CAUTION - The sender of this message is external to the SBA network. Please use care when clicking on links and responding with sensitive information. Send suspicious email to spam@sba.gov.

Hi Diane,

Please look at the attached application.  From everything that I know, we shouldn't proceed entering this into ETRAN because the customer is ineligible based on how question 1 was answered.  Let me know how to proceed with this one.

 Sandra

MSBMailGate.MachiasSavings.com made the following annotations
------------------------------------------------------------------
The information contained in this e-mail (including attachments) is intended for the recipients specified in the message and may be privileged, confidential, proprietary, or otherwise protected from use or disclosure and should be treated as a confidential Machias Savings Bank communication. If you are not the intended recipient, any use, distribution, printing, copying or action in reliance on the contents of this email is prohibited. If you received this email in error, please immediately delete it from your systems and notify the sender. Thank you.

------------------------------------------------------------------

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

**EXHIBIT C**

**SMALL BUSINESS ADMINISTRATION**

**[Docket Number SBA-2020-0021]**

**13 CFR Parts 120 and 121**

**RIN 3245-AH37**

**Business Loan Program Temporary Changes; Paycheck Protection Program –**

**Requirements – Promissory Notes, Authorizations, Affiliation, and Eligibility**

**AGENCY:**  U. S. Small Business Administration.

**ACTION:**  Interim Final Rule.

**SUMMARY:**  On April 2, 2020, the U.S. Small Business Administration (SBA) posted an interim final rule (the First PPP Interim Final Rule) announcing the implementation of sections 1102 and 1106 of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act or the Act).  Section 1102 of the Act temporarily adds a new program, titled the "Paycheck Protection Program," to the SBA's 7(a) Loan Program.  Section 1106 of the Act provides for forgiveness of up to the full principal amount of qualifying loans guaranteed under the Paycheck Protection Program (PPP).  The PPP is intended to provide economic relief to small businesses nationwide adversely impacted by the Coronavirus Disease 2019 (COVID-19).  SBA posted additional interim final rules on April 3, 2020 and April 14, 2020.  This interim final rule supplements the previously posted interim final rules with additional guidance.  This interim final rule supplements SBA's implementation of section 1102 and 1106 of the Act and requests public comment.

DATES:  <u>Effective Date</u>: This rule is effective [INSERT DATE OF PUBLICATION IN THE FEDERAL REGISTER].

<u>Applicability Date</u>: This interim final rule applies to applications submitted under the Paycheck Protection Program through June 30, 2020, or until funds made available for this purpose are exhausted.

<u>Comment Date</u>: Comments must be received on or before [INSERT DATE 30 DAYS AFTER DATE OF PUBLICATION IN THE FEDERAL REGISTER].

ADDRESSES: You may submit comments, identified by number SBA-2020-0021 through the Federal eRulemaking Portal: http://www.regulations.gov.  Follow the instructions for submitting comments.  SBA will post all comments on www.regulations.gov.  If you wish to submit confidential business information (CBI) as defined in the User Notice at www.regulations.gov, please send an email to ppp-ifr@sba.gov.  Highlight the information that you consider to be CBI and explain why you believe SBA should hold this information as confidential.  SBA will review the information and make the final determination whether it will publish the information.

FOR FURTHER INFORMATION CONTACT:  A Call Center Representative at 833-572-0502, or the local SBA Field Office; the list of offices can be found at https://www.sba.gov/tools/local-assistance/districtoffices.

SUPPLEMENTARY INFORMATION:

I.       Background Information

On March 13, 2020, President Trump declared the ongoing Coronavirus Disease 2019 (COVID-19) pandemic of sufficient severity and magnitude to warrant an emergency declaration for all States, territories, and the District of Columbia.  With the COVID-19 emergency, many small businesses nationwide are experiencing economic hardship as a direct result of the Federal, State, tribal, and local public health measures that are being

taken to minimize the public's exposure to the virus.  These measures, some of which are government-mandated, are being implemented nationwide and include the closures of restaurants, bars, and gyms.  In addition, based on the advice of public health officials, other measures, such as keeping a safe distance from others or even stay-at-home orders, are being implemented, resulting in a dramatic decrease in economic activity as the public avoids malls, retail stores, and other businesses.

On March 27, 2020, the President signed the Coronavirus Aid, Relief, and Economic Security Act (the CARES Act or the Act) (Pub. L. 116-136) to provide emergency assistance and health care response for individuals, families, and businesses affected by the coronavirus pandemic.  The Small Business Administration (SBA) received funding and authority through the Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency.  Section 1102 of the Act temporarily permits SBA to guarantee 100 percent of 7(a) loans under a new program titled the "Paycheck Protection Program."  Section 1106 of the Act provides for forgiveness of up to the full principal amount of qualifying loans guaranteed under the Paycheck Protection Program.

II.      Comments and Immediate Effective Date

The intent of the Act is that SBA provide relief to America's small businesses expeditiously.  This intent, along with the dramatic decrease in economic activity nationwide, provides good cause for SBA to dispense with the 30-day delayed effective date provided in the Administrative Procedure Act.  Specifically, it is critical to meet lenders' and borrowers' need for clarity concerning program requirements as rapidly as

possible because the last day eligible borrowers can apply for and receive a loan is June
30, 2020.

This interim final rule supplements previous regulations and guidance on several
important, discrete issues.  The immediate effective date of this interim final rule will
benefit lenders so that they can swiftly close and disburse loans to small businesses.  This
interim final rule is effective without advance notice and public comment because section
1114 of the Act authorizes SBA to issue regulations to implement Title I of the Act
without regard to notice requirements.  This rule is being issued to allow for immediate
implementation of this program.  Although this interim final rule is effective
immediately, comments are solicited from interested members of the public on all aspects
of the interim final rule, including section III below.  These comments must be submitted
on or before [INSERT DATE 30 DAYS AFTER DATE OF PUBLICATION IN THE
FEDERAL REGISTER].  SBA will consider these comments and the need for making
any revisions as a result of these comments.

III.    Paycheck Protection Program Requirements for Promissory Notes,

        Authorizations, Affiliation, and Eligibility

*Overview*

The CARES Act was enacted to provide immediate assistance to individuals,
families, and organizations affected by the COVID-19 emergency.  Among the
provisions contained in the CARES Act are provisions authorizing SBA to temporarily
guarantee loans under the Paycheck Protection Program (PPP).  Loans under the PPP will
be 100 percent guaranteed by SBA, and the full principal amount of the loans and any
accrued interest may qualify for loan forgiveness. Additional information about the PPP

4

is available in the First PPP Interim Final Rule (85 FR 20811), a second interim final rule

(85 FR 20817) (the Second PPP Interim Final Rule), and a third interim final rule (the

Third PPP Interim Final Rule) (85 FR 21747) (collectively, the PPP Interim Final Rules).

1. ***Requirements for Promissory Notes and Authorizations***

This guidance is substantively identical to previously posted FAQ guidance.

a. *Are lenders required to use a promissory note provided by SBA or may they use*

*their own?*

Lenders may use their own promissory note or an SBA form of promissory note.

*See* FAQ 19 (posted April 8, 2020).

b. *Are lenders required to use a separate SBA Authorization document to issue PPP*

*loans?*

No. A lender does not need a separate SBA Authorization for SBA to guarantee a

PPP loan. However, lenders must have executed SBA Form 2484 (the Lender

Application Form - Paycheck Protection Program Loan Guaranty)[1] to issue PPP

loans and receive a loan number for each originated PPP loan. Lenders may

include in their promissory notes for PPP loans any terms and conditions,

including relating to amortization and disclosure, that are not inconsistent with

Sections 1102 and 1106 of the CARES Act, the PPP Interim Final Rules and

guidance, and SBA Form 2484. *See* FAQ 21 (posted April 13, 2020). The

decision not to require a separate SBA Authorization in order to ensure that

critical PPP loans are disbursed as efficiently as practicable.

---

[1] This requirement is satisfied by a lender when the lender completes the process of submitting a loan through the E-Tran system; no transmission or retention of a physical copy of Form 2484 is required.

### 2.  *Clarification Regarding Eligible Businesses*

a.  *Is a hedge fund or private equity firm eligible for a PPP loan?*

No.  Hedge funds and private equity firms are primarily engaged in investment or speculation, and such businesses are therefore ineligible to receive a PPP loan. The Administrator, in consultation with the Secretary, does not believe that Congress intended for these types of businesses, which are generally ineligible for section 7(a) loans under existing SBA regulations, to obtain PPP financing.

b.  *Do the SBA affiliation rules prohibit a portfolio company of a private equity fund from being eligible for a PPP loan?*

Borrowers must apply the affiliation rules that appear in 13 CFR 121.301(f), as set forth in the Second PPP Interim Final Rule (85 FR 20817).  The affiliation rules apply to private equity-owned businesses in the same manner as any other business subject to outside ownership or control.[2]  However, in addition to applying any applicable affiliation rules, all borrowers should carefully review the required certification on the Paycheck Protection Program Borrower Application Form (SBA Form 2483) stating that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."

c.  *Is a hospital owned by governmental entities eligible for a PPP loan?*

A hospital that is otherwise eligible to receive a PPP loan as a business concern or nonprofit organization (described in section 501(c)(3) of the Internal Revenue Code of 1986 and exempt from taxation under section 501(a) of such Code) shall

---

[2] However, the Act waives the affiliation rules if the borrower receives financial assistance from an SBA-licensed Small Business Investment Company (SBIC) in any amount.  This includes any type of financing listed in 13 CFR 107.50, such as loans, debt with equity features, equity, and guarantees.  Affiliation is waived even if the borrower has investment from other non-SBIC investors.

not be rendered ineligible for a PPP loan due to ownership by a state or local

government if the hospital receives less than 50% of its funding from state or

local government sources, exclusive of Medicaid.

The Administrator, in consultation with the Secretary, determined that this

exception to the general ineligibility of government-owned entities, 13 CFR

120.110(j), is appropriate to effectuate the purposes of the CARES Act.

d.   Part III.2.b. of the Third PPP Interim Final Rule (85 FR 21747, 21751) is revised

to read as follows:

*Are businesses that receive revenue from legal gaming eligible for a PPP Loan?*

A business that is otherwise eligible for a PPP Loan is not rendered ineligible due

to its receipt of legal gaming revenues, and 13 CFR 120.110(g) is inapplicable to

PPP loans.  Businesses that received illegal gaming revenue remain categorically

ineligible.  On further consideration, the Administrator, in consultation with the

Secretary, believes this approach is more consistent with the policy aim of making

PPP loans available to a broad segment of U.S. businesses.

**3.  *Business Participation in Employee Stock Ownership Plans***

*Does participation in an employee stock ownership plan (ESOP) trigger*

*application of the affiliation rules?*

No.  For purposes of the PPP, a business's participation in an ESOP (as defined in

15 U.S.C. § 632(q)(6)) does not result in an affiliation between the business and

the ESOP.  The Administrator, in consultation with the Secretary, determined that

this is appropriate given the nature of such plans.  Under an ESOP, a business

concern contributes its stock (or money to buy its stock or to pay off a loan that

was used to buy stock) to the plan for the benefit of the company's employees.
The plan maintains an account for each employee participating in the plan.
Shares of stock vest over time before an employee is entitled to them.  However,
with an ESOP, an employee generally does not buy or hold the stock directly
while still employed with the company.  Instead, the employee generally receives
the shares in his or her personal account only upon the cessation of employment
with the company, including retirement, disability, death, or termination.

4. *Eligibility of Businesses Presently Involved in Bankruptcy Proceedings*

*Will I be approved for a PPP loan if my business is in bankruptcy?*

No.  If the applicant or the owner of the applicant is the debtor in a bankruptcy
proceeding, either at the time it submits the application or at any time before the
loan is disbursed, the applicant is ineligible to receive a PPP loan.  If the applicant
or the owner of the applicant becomes the debtor in a bankruptcy proceeding after
submitting a PPP application but before the loan is disbursed, it is the applicant's
obligation to notify the lender and request cancellation of the application.  Failure
by the applicant to do so will be regarded as a use of PPP funds for unauthorized
purposes.

The Administrator, in consultation with the Secretary, determined that providing
PPP loans to debtors in bankruptcy would present an unacceptably high risk of an
unauthorized use of funds or non-repayment of unforgiven loans.  In addition, the
Bankruptcy Code does not require any person to make a loan or a financial
accommodation to a debtor in bankruptcy.  The Borrower Application Form for
PPP loans (SBA Form 2483), which reflects this restriction in the form of a

borrower certification, is a loan program requirement.  Lenders may rely on an applicant's representation concerning the applicant's or an owner of the applicant's involvement in a bankruptcy proceeding.

5. ***Limited Safe Harbor with Respect to Certification Concerning Need for PPP Loan Request***

Consistent with section 1102 of the CARES Act, the Borrower Application Form requires PPP applicants to certify that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."

Any borrower that applied for a PPP loan prior to the issuance of this regulation and repays the loan in full by May 7, 2020 will be deemed by SBA to have made the required certification in good faith.

The Administrator, in consultation with the Secretary, determined that this safe harbor is necessary and appropriate to ensure that borrowers promptly repay PPP loan funds that the borrower obtained based on a misunderstanding or misapplication of the required certification standard.

6. ***Additional Information***

SBA may provide further guidance, if needed, through SBA notices that will be posted on SBA's website at www.sba.gov.  Questions on the Paycheck Protection Program may be directed to the Lender Relations Specialist in the local SBA Field Office.  The local SBA Field Office may be found at https://www.sba.gov/tools/local-assistance/districtoffices.

**<u>Compliance with Executive Orders 12866, 12988, 13132, 13563, and 13771, the
Paperwork Reduction Act (44 U.S.C. Ch. 35), and the Regulatory Flexibility Act (5
U.S.C. 601-612).</u>**

<u>Executive Orders 12866, 13563, and 13771</u>

This interim final rule is economically significant for the purposes of Executive
Orders 12866 and 13563, and is considered a major rule under the Congressional Review
Act.  SBA, however, is proceeding under the emergency provision at Executive Order
12866 Section 6(a)(3)(D) based on the need to move expeditiously to mitigate the current
economic conditions arising from the COVID-19 emergency.  This rule's designation
under Executive Order 13771 will be informed by public comment.

<u>Executive Order 12988</u>

SBA has drafted this rule, to the extent practicable, in accordance with the standards
set forth in section 3(a) and 3(b)(2) of Executive Order 12988, to minimize litigation,
eliminate ambiguity, and reduce burden.  The rule has no preemptive or retroactive effect.

<u>Executive Order 13132</u>

SBA has determined that this rule will not have substantial direct effects on the
States, on the relationship between the National Government and the States, or on the
distribution of power and responsibilities among the various layers of government.
Therefore, SBA has determined that this rule has no federalism implications warranting
preparation of a federalism assessment.

<u>Paperwork Reduction Act, 44 U.S.C. Chapter 35</u>

SBA has determined that this rule will not impose new or modify existing
recordkeeping or reporting requirements under the Paperwork Reduction Act.

Regulatory Flexibility Act (RFA)

The Regulatory Flexibility Act (RFA) generally requires that when an agency issues a proposed rule, or a final rule pursuant to section 553(b) of the APA or another law, the agency must prepare a regulatory flexibility analysis that meets the requirements of the RFA and publish such analysis in the Federal Register.  5 U.S.C. 603, 604.  Specifically, the RFA normally requires agencies to describe the impact of a rulemaking on small entities by providing a regulatory impact analysis.  Such analysis must address the consideration of regulatory options that would lessen the economic effect of the rule on small entities.  The RFA defines a "small entity" as (1) a proprietary firm meeting the size standards of the Small Business Administration (SBA); (2) a nonprofit organization that is not dominant in its field; or (3) a small government jurisdiction with a population of less than 50,000.  5 U.S.C. 601(3)–(6).  Except for such small government jurisdictions, neither State nor local governments are "small entities." Similarly, for purposes of the RFA, individual persons are not small entities.  The requirement to conduct a regulatory impact analysis does not apply if the head of the agency "certifies that the rule will not, if promulgated, have a significant economic impact on a substantial number of small entities."  5 U.S.C. 605(b).  The agency must, however, publish the certification in the Federal Register at the time of publication of the rule, "along with a statement providing the factual basis for such certification." If the agency head has not waived the requirements for a regulatory flexibility analysis in accordance with the RFA's waiver provision, and no other RFA exception applies, the agency must prepare the regulatory flexibility analysis and publish it in the Federal Register at the time of promulgation or, if the rule is promulgated in response to an emergency that makes

timely compliance impracticable, within 180 days of publication of the final rule.  5

U.S.C. 604(a), 608(b).  Rules that are exempt from notice and comment are also exempt

from the RFA requirements, including conducting a regulatory flexibility analysis, when

among other things the agency for good cause finds that notice and public procedure are

impracticable, unnecessary, or contrary to the public interest.  SBA Office of Advocacy

guide: How to Comply with the Regulatory Flexibility Act, Ch.1. p.9.  Accordingly, SBA

is not required to conduct a regulatory flexibility analysis.


**Jovita Carranza,**
*Administrator.*