UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>PENOBSCOT VALLEY HOSPITAL,<br><br>Debtor | Chapter 11<br>Case No. 19-10034 |
| PENOBSCOT VALLEY HOSPITAL,<br><br>Plaintiff,<br>  v.<br><br>JOVITA CARRANZA, in her capacity as Administrator for the U.S. Small Business Administration,<br><br>Defendant | Adv. Proc. No. 20-1005 |

## TEMPORARY RESTRAINING ORDER

On April 27, 2020, the Debtor filed the Emergency Motion for Temporary Restraining Order and Request for Hearing Date and Briefing Schedule with Respect to the Debtor's Request for a Preliminary Injunction [Dkt. No. 2] (the "Motion"). At a hearing on the Motion on April 30, 2020, the Court heard arguments from the parties and considered the contents of the Motion; the verified allegations in the Debtor's complaint; the objection to the Motion filed Jovita Carranza, in her capacity as Administrator for the U.S. Small Business Administration [Dkt. No. 11]; and the Debtor's Reply in Support of the Motion [Dkt. No. 12]. The Court further considered the text and purpose of the Coronavirus Aid, Relief and Economic Security Act (the "CARES Act"); the Paycheck Protection Program ("PPP"), enacted in § 1102 of the CARES Act; § 7(a) of the Small Business Act (15 U.S.C. § 636(a)); and the Administrator's interim final

rules promulgated on April 15, 2020, and April 24, 2020, Docket Nos. SBA-2020-0015 and SBA 2020-0021.

Before deciding whether the Debtor is entitled to a temporary restraining order ("TRO"), the Court must address a threshold question: is the Administrator immune from the Debtor's claims for preliminary and permanent injunctive relief? The analysis begins with the Bankruptcy Code, which, in relevant part, provides as follows:

> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to . . .
> (1) [11 U.S.C. §§ 105 and 525.]
> (2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.
> (3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. . . .
> (4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit[.]
> (5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

11 U.S.C. § 106(a). In this proceeding, the Debtor seeks (among other things) injunctive relief against the Administrator to remedy an alleged violation of 11 U.S.C. § 525(a), invoking Fed. R. Bankr. P. 7065 and 11 U.S.C. § 105(a).[1] In isolation, section 106(a) of the Bankruptcy Code would appear to permit such an action. The Administrator, however, asserts immunity from injunctive relief under the following provisions of applicable nonbankruptcy law:

---

[1] To the extent that the claims are based on 11 U.S.C. § 525 and other provisions of the Bankruptcy Code, this is a proceeding arising in or under the Code, and as a result, is a core proceeding. *See* 28 U.S.C. § 157(b).

**(b) Powers of Administrator**

In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator may —

> (1) sue and be sued . . . in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property[.]

15 U.S.C. § 634(b).  In the Administrator's view, this anti-injunction provision bars any and all injunctive relief against her or her property.

The Administrator's perspective fails to account for binding caselaw interpreting 15 U.S.C. § 634(b) to permit certain forms of relief against the Small Business Administration ("SBA") that might be characterized as injunctive.  In <u>Ulstein Maritime, Ltd. v. United States</u>, 833 F.2d 1052 (1st Cir. 1987), the First Circuit Court of Appeals affirmed an order invalidating a certificate issued by the SBA for failure to comply with applicable laws and regulations.  In so doing, the Court indicated that the anti-injunction provision of 15 U.S.C. § 634(b) "protects the [SBA] from interference with its internal workings by judicial orders attaching agency funds, etc., but does not provide blanket immunity from every type of injunction."  <u>Ulstein</u>, 833 F.2d at 1057.  After examining the purposes of the statute, the Court suggested that the anti-injunction language "should not be interpreted as a bar to judicial review of agency actions that exceed agency authority where the remedies would not interfere with internal agency operations."  <u>Id.</u>

In this proceeding, as in <u>Ulstein</u>, the plaintiff seeks an order invalidating an SBA decision due to the Administrator's asserted failure to comply with applicable law.  The Debtor seeks no relief that would interfere with the SBA's "internal workings" as distinguished from the product of those workings.  An award of preliminary injunctive relief directing the Administrator to reserve sufficient authority to grant the Debtor's application if the Debtor later prevails on the

merits will not interfere with the SBA's internal agency operations in the sense contemplated by Ulstein. As such, the Court may enter a carefully tailored temporary restraining order against the Administrator, notwithstanding the anti-injunction provision of 15 U.S.C. § 634(b). *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); 11 U.S.C. § 525(a) (providing in relevant part that "a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to . . . a person that is or has been a debtor under this title . . . solely because such . . . debtor is or has been a debtor under this title"). This conclusion is consistent with the purpose of section 106(a)(4), which requires an order against a governmental unit to be enforced in accordance with appropriate nonbankruptcy law. As explained in the legislative history of section 106, although "an order against a governmental unit will not be enforceable by attachment or seizure of government assets[,]" the court "retains ample authority to enforce nonmonetary orders and judgments." 140 Cong. Rec. H10752-01, at H10766, 1994 WL 545773 (Oct. 4, 1994).

At this juncture, the ultimate question is whether the Debtor is entitled to the TRO that it seeks. The answer turns on the same four factors that govern a motion for a preliminary injunction. *See* Animal Welfare Inst. v. Martin, 665 F. Supp. 2d 19, 22 (D. Me. 2009). Those four factors are:

> [1] the probability of the movant's success on the merits, [2] the prospect of irreparable harm absent the injunction, [3] the balance of the relevant equities (focusing on the hardship to the movant if an injunction does not issue as contrasted with the hardship to the nonmovant if it does), and [4] the effect of the court's action on the public interest.

Rosario-Urdaz v. Rivera-Hernandez, 350 F.3d 219, 221 (1st Cir. 2003). "As with a preliminary injunction, the party seeking relief bears the burden of demonstrating that these factors weigh in

its favor." Animal Welfare Inst., 665 F. Supp. 2d at 22 (quotation marks omitted).  Trial courts tasked with balancing these factors "have wide discretion in making judgments regarding the appropriateness of [preliminary injunctive] relief."  Francisco Sanchez v. Esso Standard Oil Co., 572 F.3d 1, 14 (1st Cir. 2009).  Due to the preliminary nature of the relief and the undeveloped state of the record, the court's findings and conclusions on a request for a TRO do not represent an adjudication on the merits and are not binding on the parties in the later action.  *See* Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 6 (1st Cir. 1991) ("[A] court's conclusions as to the merits of the issues presented on preliminary injunction are to be understood as statements of probable outcomes."); Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2951 (3d ed.) ("[A] court's findings on an application for a temporary restraining order do not represent an adjudication on the merits.  Thus, they are not binding on the parties in the later action for a permanent injunction.") (footnotes omitted).

With these principles in mind, the Court FINDS and CONCLUDES as follows:

1.  The Debtor is entitled to issuance of a temporary restraining order under Fed. R. Civ. P. 65 and Fed. R. Bankr. P. 7065.

2.  The Debtor has shown a likelihood of success on the merits of the claim asserted in Count III of the complaint, namely that the Administrator acted in violation of 11 U.S.C. § 525(a) by refusing to permit the Debtor an opportunity to participate in the PPP solely because the Debtor is presently a debtor in a case under Title 11 (and therefore is unquestionably "involved in any bankruptcy").[2]  This conclusion rests on the following concessions and preliminary determinations:

---

[2] Although the complaint also raises the issue of whether the Administrator exceeded the scope of her authority by issuing a rule and the official PPP application form that rendered the Debtor ineligible to

(A) The Administrator concedes that the SBA falls within the definition of "governmental unit" in the Bankruptcy Code.

(B) The Administrator also concedes that the SBA denied the Debtor the oppportunity to participate in the PPP solely because the Debtor is currently in chapter 11.

(C) There is one remaining element of section 525(a) in play. To determine whether the Debtor has shown a likelihood of success on Count III of its complaint, the Court must consider the following question: does the Administrator's categorical exclusion of the Debtor from the term "eligible recipient," 15 U.S.C. § 636(a)(36)(A)(iv), constitute the denial of, or discrimination with respect to, a "license, permit, charter, franchise, or other similar grant" for purposes of section 525(a)? There is no binding authority from the United States Supreme Court or the First Circuit Court of Appeals on this precise question. There are, however, several decisions interpreting section 525(a) in other contexts, and many of those decisions consider the language of section 525(a) in light of the stated purpose of the statute. *See, e.g.*, Stoltz v. Brattleboro Housing Auth. (In re Stoltz), 315 F.3d 80 (2d Cir. 2002) (holding that eviction of a debtor from public housing unit solely based on her failure to pay discharged, pre-petition rent constituted illegal discrimination under section 525(a)); In re The Bible Speaks, 69 B.R. 368, 374 (Bankr. D. Mass. 1987) ("Congress intended § 525(a) . . . to expand on and develop Perez so that the doctrine would extend to many forms of discrimination."); Rose v. Conn. Housing Fin. Auth. (In re Rose), 23 B.R. 662, 666-67 (Bankr. D. Conn. 1982) (construing section 525(a) in light of the fresh start policy

---

apply for a PPP loan due to the Debtor's status as a debtor in a chapter 11 case, the Court need not and does not address that issue at this point.

and concluding that a state may not exempt debtors from a state-sponsored home financing program solely because of bankruptcy); *see also* 4 Collier on Bankruptcy ¶ 525.02 (16th ed.) ("[S]ection 525(a) is designed to protect persons from discriminatory treatment based solely on past financial difficulty.") (footnote omitted). While the answer is not free from all doubt, the Debtor has articulated a sufficient likelihood of success, when considered along with its showings on the balance of harms and the public interest, to warrant the issuance of a temporary restraining order. Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2951 (3d ed.) (suggesting that the plaintiff must ordinarily demonstrate "at least a reasonable probability of prevailing on the merits" but that the "necessary persuasiveness of this showing" may vary, depending on the facts of the case and the other relevant factors).

(D) There are cases holding that section 525(a) does not extend to loans or, stated differently, that a loan is not "a license, permit, charter, franchise, or other similar grant" within the meaning of section 525(a). The Administrator correctly points out that the PPP describes "covered loans" and specifies loan features, such as an interest rate and a repayment term. *See, e.g.,* 15 U.S.C. § 636(a)(36)(A)(ii), (B), (E), (F), (L). True enough, but that fixation on the details loses the forest in the trees during a conflagration. The CARES Act is a grant of aid necessitated by a public health crisis. It is one of many responses by federal, state, and local governments designed to help citizens weather an unprecedent storm. Likening a covered loan under the PPP to a garden-variety loan that is not be protected under section 525(a) may miss the point.

(E) Section 525(c), by its terms, applies to student loans and the Administrator argues that the existence of section 525(c) proves that Congress did not intend section 525(a)

to extend to loans: if section 525(a) extended to loans, why would Congress need to craft specific treatment for student loans in section 525(c)? This is a fair question, but the Supreme Court has, at times, been skeptical of this type of inferential reasoning. *See, e.g.*, Mission Prod. Holdings, Inc. v. Tempnology, LLC, 139 S. Ct. 1652, 1664-65 (2019). The hoary canon of *expressio unius est exclusio alterius* does not, alone, doom the Debtor's preferred construction of section 525(a). *See* Hewlett-Packard Co, Inc. v. Berg, 61 F.3d 101, 106 (1st Cir. 1995) (indicating that the canon "is an aid to construction and not an inflexible rule").

(F) The Court's charge is to consider the language of the statute, the words that Congress did, in fact, use. There is, at this early juncture in the litigation, enough of a showing that participation in the PPP could be characterized as an "other similar grant" such that the Debtor has met its burden on the likelihood of success on Count III.

(G) The Court is sympathetic to the significant challenges faced by the Administrator in the implementation of measures taken by the federal government in response to the extraordinary public health crisis and the resulting economic devastation. The SBA was under—and continues to be under—immense pressure to distribute aid without delay. Time is truly of the essence. That said, this country's laws cannot be pushed aside, even inadvertently, during times of crisis.

3. The Debtor has demonstrated a risk of immediate and irreparable harm in the absence of a temporary restraining order. This conclusion rests on the following preliminary findings:

(A) PPP funds are available on a first come, first served basis. The Debtor's application for funds under PPP was not processed and the Debtor did not receive funds prior to their exhaustion under the first tranche of PPP funding.

(B) On or about April 23, 2020, Congress enacted legislation making additional funds available for PPP.

(C) The Debtor is a critical access hospital providing services in Lincoln, Maine. The Debtor's business operations have been significantly impacted by Covid-19 due to the fact that many non-essential elective and office visits have been rescheduled or canceled. A significant percentage of the Debtor's revenue is derived from non-essential and elective procedures. In the absence of funding from PPP or another source, the Debtor may be forced to discontinue business operations by the middle of June and may not have sufficient funds for an orderly liquidation under those circumstances.

(D) According to the application attached to the complaint, the Debtor has approximately 120 employees who may lose their jobs if the Debtor's business operations cease.

(E) Due to the nature of the Debtor's business operations, it must continue to employ staff in order to meet its charitable mission and provide health care services.

(F) PPP funds are being exhausted quickly, in a matter of weeks (if not days). If the Debtor is not permitted to submit an application for funding under PPP in the very near term, funding may be exhausted. And, as previously mentioned, if the Debtor does not receive PPP funding, then it may be forced to close. When this relatively concrete forecast is "juxtaposed and weighed in tandem" with the Debtor's showing

of a likelihood of success on the merits, the forecast possesses sufficient substance to meet the Debtor's burden of establishing a prospect of immediate and irreparable harm if the TRO does not issue.  *See* <u>Ross-Simons of Warwick v. Baccarat, Inc.</u>, 102 F.3d 12, 19 (1st Cir. 1996) (providing guideposts to measure the "quantum of . . . harm that will suffice to justify interim injunctive relief"); *see also* <u>Semmes Motors, Inc. v. Ford Motor Co.</u>, 429 F.2d 1197, 1205 (2d Cir. 1970) (indicating that the destruction of a business is an irreparable injury that may be properly remedied by injunctive relief).

4. The risk of harm to the Debtor if a temporary restraining order is not granted outweighs the risk of any harm to the Administrator if a temporary restraining order is granted.

5. Given the nature of the Debtor's business operations and the purpose Congress had in enacting the CARES Act and establishing PPP, the public interest is served by issuing a temporary restraining order.

6. The Debtor is a debtor-in-possession and no bond is required under Rule 65.

7. Based on the foregoing, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** as follows:

(A) The motion is **GRANTED** on the terms and conditions set forth herein.

(B) A temporary restraining order is hereby issued, with notice, and directed to the Administrator and all agents, servants, employees, and any persons acting in concert with any of the foregoing (collectively, the "<u>Restrained Parties</u>").  The Court intends that Machias Savings Bank or any other lender participating in PPP with respect to the Debtor shall be one of the Restrained Parties upon actual notice of this order being provided to such bank.  As to Machias Savings Bank, such notice may be

provided by e-mail to counsel of record for the bank in Case No. 19-10034. This order does not extend to any Restrained Party that submits, considers, or takes any other action with respect to an application under the PPP for any person or entity other than the Debtor.

(C)  Until the expiration of this temporary restraining order, its scope shall be as follows:

    (i)    The Restrained Parties shall not deny or cause any commercial lender to deny an application of the Debtor under PPP solely on the basis that the Debtor is a debtor in bankruptcy or based on the words "or presently in bankruptcy" on the Administrator's official form of application.

    (ii)    The Restrained Parties shall not refuse to guaranty a loan sought by the Debtor under PPP solely on the basis that the Debtor is a debtor in bankruptcy or because of a "yes" answer in response to question 1 on the official form of PPP application promulgated by the Administrator.

    (iii)    The Administrator shall not authorize, guaranty, or disburse funds appropriated for loans under PPP without reserving sufficient funds or guaranty authority within the scope of the second appropriation to fund PPP to provide the Debtor with access to funds under PPP if the Debtor is eligible after implementation of the terms of this temporary restraining order and any appellate or judicial process with respect to any application filed by the Debtor. Rather, the Administrator shall ensure that she has sufficient authority within the scope of amounts appropriated for PPP as of April 30, 2020, to guaranty a loan to the Debtor in an amount the Debtor may be qualified to obtain, if the Debtor is eligible subject to the terms of

this order and after consideration of any administrative and judicial appeals and resolution of the claims in the Debtor's complaint.

(iv) The Debtor shall be authorized to submit a PPP application to a participating lender of its choosing—or a lender may consider any pending application—with the words "or presently involved in any bankruptcy" stricken from the official form of application and, if the Debtor satisfied all other conditions in question 1 to the official form, to mark the box answering question 1 "no" or, with respect to any pending application, for the participating lender to treat question 1 as if it was answered "no". The Restrained Parties shall consider the application submitted by the Debtor and fully implement all aspects of the PPP program with respect to the Debtor without any consideration of the involvement of the Debtor in bankruptcy. The application shall be considered an initial application of the submission if a subsequent application would adversely impact the Debtor's ability to qualify for a PPP loan.

(v) To the extent that any bank requires the Debtor to execute other forms, applications, or other documents for a PPP loan that include any language about whether the Debtor is involved in bankruptcy, the Debtor is authorized to strike the portion of such language about involvement in bankruptcy and the Restraining Parties shall process the forms, applications, or other documents without any consideration of the involvement of the Debtor in bankruptcy.

(vi) Nothing in this order obligates Machias Savings Bank to accept or submit a PPP application on behalf of the Debtor.

(vii) To the extent that approval of the Court is required for the Debtor to obtain a PPP loan, the Debtor shall file a motion and seek entry of an order authorizing such relief. The Debtor must file any such motion within ten days after the date of this order. Any deadline under the PPP program requiring disbursement of PPP loan proceeds is hereby extended in order to allow consideration of a motion by the Debtor seeking authority to obtain a PPP loan.

8. The Court will conduct a status conference on the Debtor's request for a preliminary injunction consistent with the terms of this order on May 5, 2020 at 9:30 a.m. At the status conference, the Administrator must be prepared to describe, in reasonable detail, the steps she has taken to comply with the terms of this order.

9. This temporary restraining order shall remain in full force and effect until expires at 5:00 p.m. (eastern) on May 14, 2020 unless either (a) terminated earlier by the Court or (b) further extended by applicable law, by order of the Court, or by written agreement of the Debtor and the Administrator.

Dated: May 1, 2020

Michael A. Fagone
United States Bankruptcy Judge
District of Maine