**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| **In re:**<br><br>**PENOBSCOT VALLEY HOSPITAL,**<br><br>Debtor. | **Chapter 11**<br><br>**Case No. 19-10034** |
| **PENOBSCOT VALLEY HOSPITAL,**<br><br>Plaintiff,<br><br>v.<br><br>**JOVITA CARRANZA, in her capacity as Administrator for the U.S. Small Business Administration,**<br><br>Defendants. | **Adversary No. 20-1005** |

| | |
|---|---|
| **In re:**<br><br>**CALAIS REGIONAL HOSPITAL,**<br><br>Debtor. | **Chapter 11**<br><br>**Case No. 19-10486** |
| **CALAIS REGIONAL HOSPITAL,**<br><br>Plaintiff,<br><br>v.<br><br>**JOVITA CARRANZA, in her capacity as Administrator for the U.S. Small Business Administration,**<br><br>Defendants. | **Adversary No. 20-1006** |

1

**SUPPLEMENTAL MEMORANDUM OF LAW**

Penobscot Valley Hospital and Calais Regional Hospital (collectively, the "Debtors") file this supplemental memorandum of law pursuant to ¶ B(9) of the Court's scheduling order [Dkt. No. 23]. This memorandum focuses on the Debtors' arguments that Jovita Carranza, the administrator (the "Administrator") of the U.S. Small Business Administration (the "SBA") (1) exceeded her statutory authority by excluding companies in bankruptcy from participating in the Paycheck Protection Program ("PPP") and (2) that, among other things, a writ of mandamus is warranted. This memorandum will also briefly discuss irreparable harm and selected additional authorities addressing PPP.

The Debtors do not waive and specifically incorporate the contents of their motions for temporary restraining orders and all supplemental briefing filed in connection therewith. Arguments in this memorandum are limited at the Court's suggestion in ¶ B(9) of the Court's scheduling order [Dkt. No. 23].

**SUPPLEMENTAL MEMORANDUM**

**I.      The CARES Act Clearly Defines Eligibility Requirements Under PPP**

1.      On March 27, 2020, Congress enacted and the President signed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") into law. Section 1102 of the CARES Act establishes PPP and adds it to the Small Business Act. In so doing, Congress authorized SBA to administer PPP in accordance with the directives contained in the CARES Act. Those directives unequivocally describe the eligibility requirements for participating applicants under the program and the regulatory authority of the SBA to administer PPP.

2.      Section 1102, which is codified in 15 U.S.C. § 636(a)(36), sets forth the statutory eligibility requirements for PPP recipients, which are different from underwriting requirements

under PPP. *See* 15 U.S.C. § 636(a)(36)(D) (imposing business size requirements and defining eligibility for sole proprietors, independent contractors and self-employed individuals); 15 U.S.C. § 636(a)(36)(F)(ii)(II) (listing required eligibility conditions). Specifically, the CARES Act makes clear that applicants who meet certain size and operational requirements are eligible to participate in the program, subject only the limited discretion of the participating financial institution, *not* SBA, to evaluate those eligibility requirements added to 15 U.S.C. § 636(a)(F)(ii)(II).[1] Bankruptcy status is not among the eligibility requirements.

3. The CARES Act authorizes the SBA to impact PPP eligibility requirements outside of those outlined within the statute itself only to the limited extent contained in 15 U.S.C. § 636(a)(36)(D)(II), which allows the agency to vary the size restrictions for applicants based on certain industry standards—not their status as debtors.[2] If Congress had intended to give the Administrator authority to alter eligibility requirements as to debtors, then it could have, and likely would have, said so. It did not.

4. The CARES Act describes the scope of regulatory authority over administration of the PPP in § 1109. In that section, Congress authorized the issuance of "regulations and guidance necessary to carry out the purposes" of the PPP, subject to certain restrictions. CARES Act, § 1109(d)(1). Most notably, those restrictions limit the ability of the government to impose

---

[1] Section 1102 of the CARES Act (codified at 15 U.S.C. § 636(a)(36)(F)(ii)) makes clear that eligibility decisions are delegated to participating financial institutions.
   *DELEGATED AUTHORITY*—
   (I)   IN GENERAL.—For purposes of making covered loan for the purposes described in clause (i), a lender approved to make loans under this subsection shall be deemed to have been delegated authority by the Administrator to make and approve covered loans, subject to the provisions of this paragraph.
   (II)  CONSIDERATIONS.—In evaluating the eligibility of a borrower for a covered loan with the terms described in this paragraph, a lender shall consider whether the borrower—
       (aa) was in operation on February 15, 2020; and
       (bb)(AA) had employees for whom the borrower paid salaries and payroll taxes; or
       (BB) paid independent contractors, as reported on a Form 1099-MISC.
(emphasis added*)*.
[2] *See* 15 U.S.C. § 632(a)(3).

3

conditions on PPP funds or terms on participating financial institutions that expand or restrict PPP's definition of applicant eligibility. *See* CARES Act, § 1109(d)(2)(B)(i). In other words, § 1109 prohibits the agency from turning bankruptcy status into eligibility requirement.

5. Instead, regulations are to be issued "to establish terms and conditions such as […] underwriting standards" as long as those regulations and guidance are "necessary to carry out the purposes" of PPP. *See* CARES Act, § 1109(e).[3] (There is nothing necessary about excluding debtors from PPP.)

6. Against this backdrop, SBA promulgated several rules, in addition to the official PPP form excluding debtors. These rules are important to understanding not only the extent to which the Administrator has exceeded her authority by excluding debtors from PPP, but also the significant ways in which PPP underwriting and approval deviates from standard section 7(a) lending. This latter point is relevant to the Court's determination that PPP functions as a grant of economic aid. Notably, while SBA promulgated rules for limited underwriting requirements, bankruptcy status is not included them and, instead, has been impermissibly added as an eligibility exclusion.

7. On April 15, 2020, the SBA promulgated an interim final rule with respect to PPP (the "April 15 Rule"). A copy of the April 15 Rule is attached as **PVH205** and will be offered for admission into evidence as exhibits **PVH205** and **CRH105**.

8. There are three provisions of the April 15 Rule of note. First, after noting that the CARES Act changes the normal section 7(a) program as it relates to PPP, the rule goes on to state that banks can "rely on certifications of the borrower in order to determine eligibility of the borrower and use of loan proceeds and to rely on specified documents provided by the borrower

---

[3] The SBA, an agency within the Department of Treasury, is authorized to administer PPP. *See* CARES Act § 1109(h).

to determine qualifying loan amount and eligibility for loan forgiveness." April 15 Rule, § III(1). The rule then states that "program requirements of the PPP identified in this rule temporarily supersede any conflicting Loan Program Requirement (as defined in 13 CFR 120.10)." *Id.* Finally, the limited underwriting requirements of PPP—review of the application and a handful of payroll documents—are identified in § III(3)(b), which then states that the underwriting obligations are "limited to the items above" and reviewing the application form.

9. On April 20, 2020, the SBA promulgated another interim final rule with respect to PPP (the "April 20 Rule"). A copy of the April 20 Rule is attached as **PVH213** and will offered for admission into evidence at trial as exhibit **PVH213** and **CRH113**. The April 20 Rule further explains the rationale behind the limited underwriting requirements for banks participating in PPP and states: "The Administrator recognizes that, unlike other SBA loan programs, the financial terms for PPP Loans are uniform for all borrowers, and **the standard underwriting process does not apply because no creditworthiness assessment is required** for PPP Loans." *See* April 20 Rule, § III(2)(a) (emphasis added).

10. While banks may consider bankruptcy status as one item during underwriting (not eligibility) in traditional section 7(a) lending, that is not the case with PPP. No PPP regulation requires a participating financial institution to consider the bankruptcy status, nor any other characteristic or condition of a PPP applicant which might impact an applicant's potential ability to repay PPP funds, *as part of its underwriting process*. In fact, applicable regulations waive the normal underwriting process.

11. Rather than *permitting* a bank to consider bankruptcy status in underwriting, which would be consistent with SBA's normal practices, SBA has *commanded* that debtors are automatically excluded as a matter of eligibility. This is the import of the official PPP application

5

form and the rule SBA promulgated on April 28 (the "April 28 Rule").  A copy of the April 28 Rule is attached as **PVH206** and will be offered for admission into evidence at trial as exhibits **PVH206** and **CRH106**.  According to the rule: "If the applicant . . . is the debtor in a bankruptcy proceeding . . . the applicant is **ineligible** to receive a PPP loan." April 28 Rule, § III(4) (emphasis added).  This is outside the scope of the Administrator's authority under the CARES Act and in violation of § 525(a) of the Bankruptcy Code, a statute that the Administrator does not have discretion to violate.

12.    The point being that SBA has added bankruptcy status as an eligibility criteria, which is not allowed.  There is no provision in the CARES Act which conditions eligibility or the government's obligation to guaranty funds disbursed under PPP on the creditworthiness of an applicant—or the applicant's bankruptcy status.

## II.    The SBA Exceeded Its Statutory Authority By Prohibiting Debtors From Applying For PPP

13.    Based on the foregoing, the Administrator has clearly exceeded the authority given to her under the CARES Act in excluding debtors in a bankruptcy proceeding from participating in PPP.  This is outside the statutory mandate of authority under the CARES Act for all the reasons above.  It is also in clear violation of the Administrative Procedures Act.  *See* 5 U.S.C. § 706(2)(C).

14.    In determining whether an agency's regulations are valid under a particular statute, the Court must first determine whether Congress has "spoken clearly" on the issue, and, if so, the Court must "give effect to Congress's intent." *Maine Med. Ctr. v. Burwell*, 841 F.3d 10, 21 (1st Cir. 2016) (*citing Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).  The Court need not consider whether an agency's interpretation of the statute is permissible unless Congressional intent is unclear from the text of the law.  *See id*.  If Congress's intent is clear, then the agency must follow it.

15. As discussed *infra,* the CARES Act directly addresses PPP eligibility requirements and regulatory authority to manage the program. The Defendant has no authority to condition PPP eligibility on the status of the applicant as a debtor in a bankruptcy proceeding. Because the text of the CARES Act itself is clear, the Court need not look further.

16. This reading of the Act is supported by § 4003(c)(3)(D) of the CARES Act, which lays out the requirements for a loan program for mid-sized businesses. This is separate and apart from PPP. This loan program for mid-sized businesses contains no forgiveness component. Accordingly, Congress specified within the Act that certain characteristics indicating a borrower's creditworthiness would render an applicant *ineligible* for the program, including the borrower's bankruptcy status. PPP does not contain this same eligibility requirement.

17. Based on this, the Court may enter a declaratory judgment that the Administrator exceeded her authority and rely on the Administrative Procedures Act to compel her to process Debtors' PPP application without regard to its status as a debtor in a bankruptcy proceeding and, if otherwise eligible, permit the Debtors to participate in PPP fully. *See* 5 U.S.C. § 706(1). This must include a command that SBA honor the SBA guaranty and all provisions under § 1106 of the CARES Act.

18. Lastly, the record before the Court is also sufficient to determine that the Administrator has acted in an arbitrary and capricious manner, in violation of 5 U.S.C. § 706(2)(A). The Court has all of the tools necessary to address the concerns of the Administrator in the April 28 Rule. The Court can condition the usage of PPP Funds on compliance with the CARES Act, prevent any party from obtaining an interest in those funds, and mandate regular reporting—to creditors, the Court, and SBA. The Administrator will not offer any testimonial evidence, and the Debtors do not believe that there will be anything in the record establishing that SBA has engaged

in a thoughtful, deliberative process with respect to the mandates of the April 28 Rule (as to bankruptcy status)—or that SBA engages in any review whatsoever of the financial health or viability of any company seeking PPP funds. Thus, from the Administrator's perspective, they are all equally at risk of failure, and it is arbitrary and capricious to exclude debtors.

### III.    The Debtor Is Entitled To A Writ Of Mandamus Compelling The Administrator's Compliance With The CARES Act

19. Federal courts have jurisdiction to compel "an officer or employee of the United States or any agency thereof to perform a duty" owed to a plaintiff. 28 U.S.C. § 1361. Because the CARES Act creates a duty for the Administrator to allow all eligible participants to apply for PPP funds, and because the Debtors are eligible participants but for the Administrator's unlawful discrimination against them on the basis of their status as debtors, this court may issue a writ of mandamus to compel the SBA to allow the Debtors' application process to proceed and to honor all components of PPP to the extent the Debtors are eligible for the program without regard to their bankruptcy status. The Administrator had no discretion to discriminate against the Debtors based on their bankruptcy status when implementing PPP.

20. In determining whether mandamus is available, the Court must "measure the allegations in the complaint against the statutory and constitutional framework to determine whether the particular official action complained of falls within the scope of the discretion which Congress accorded the administrators." *Davis Assocs., Inc. v. Sec'y, Dep't of Hous. & Urban Dev.*, 498 F.2d 385, 389 (1st Cir. 1974) (*citing Work v. United States ex rel. Rives*, 267 U.S. 175, 177-178, 45 S.Ct. 252, 69 L.Ed. 561 (1925)). Mandamus is only available when official action is *prescribed* by law. It is not a remedy available when the government is acting within its discretionary authority.

8

21. In addition, a writ of mandamus is appropriate to "provide a remedy for a plaintiff only if he has exhausted all other avenues of relief." *Heckler v. Ringer*, 466 U.S. 602, 616, 104 S. Ct. 2013, 2022, 80 L. Ed. 2d 622 (1984) (*citing Kerr v. United States District Court*, 426 U.S. 394, 402-403, 96 S.Ct. 2119, 2123-2124, 48 L.Ed.2d 725 (1976); *United States ex rel. Girard Trust Co. v. Helvering*, 301 U.S. 540, 543-544, 57 S.Ct. 855, 857, 81 L.Ed. 1272 (1937)).

22. Should the Court determine that another remedy is not available to the Debtors pursuant to § 525 of the Bankruptcy Code, it should issue a writ of mandamus and command the Administrator to perform her obligations under PPP in a manner that does not discriminate against Debtors. Although mandamus is clearly an extraordinary remedy, it is an appropriate remedy under the circumstances of this case. First, the CARES Act clearly describes who is eligible to apply for PPP funds and how an eligible application must be treated by the Administrator. There is no agency discretion to change or impose additional eligibility requirements. Similarly, Congress has not provided the Administrator discretion to violate § 525(a) of the Bankruptcy. In excluding debtors in a bankruptcy proceeding from PPP, the Defendant has acted outside of her authority and violated a duty owed to the Debtor under the CARES Act and § 525(a) of the Bankruptcy Code.

23. In addition, the Administrator's own position is that the Debtor lacks any other remedy to compel compliance with the CARES Act. The Administrator has stopped the Debtor from submitting its PPP application at all, instead of denying the application once submitted. This means that there has not been an official agency action taken by the SBA in this case, and the Debtor has no administrative process available to it to appeal the agency's action. Moreover, the Administrator's stated position in this case is that injunctive relief is not available. Upon

9

information and belief, her stated position in other matters is that money damages are unavailable. Seeking relief in Court is the Debtor's only avenue for relief.

24. To accept the Administrator's position in the face of a determination that § 525(a) has been violated would mean abrogation of § 525(a) and that SBA is wholly unaccountable to this Court—or any court—for discrimination against debtors.

## IV.   Irreparable Harm

25. The Debtors understand the Administrator's position not only to be that injunctive relief is unavailable under § 634(b)(1), but also that the Debtors cannot demonstrate irreparable harm due to the fact that they have received federal stimulus funds. The Debtors disagree with this position for two reasons.

26. First, the Administrator's position conflates the issues before the Court and is turning the question of irreparable harm into a review of the Debtors' PPP applications on the merits. The Debtors initiated these adversary proceedings because they were unable to obtain a review by SBA on the merits of their PPP applications. The official applications require certifications that "current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant." *See* **PVH201** and **CRH101**. The Court will be presented with evidence that the Debtors hold good-faith beliefs to support this certification. If the Court orders the Administrator to review the applications on the merits, then the reviewing party can consider the certifications and decide whether to grant or deny the applications. A denial would likely give rise to administrative remedies and the potential for judicial review. The Debtors have been denied access to these remedies because SBA will not take official action on the applications and has deemed the Debtors ineligible—even though other similarly situated hospitals outside of bankruptcy have not been.

27. The Administrator's position is akin to a governmental agency, such as a Veterans' Administration hospital, denying services to a person on the basis of their status in a protected class and then, after the fact, saying that there should be no remedy for discrimination if the patient's symptoms have subsided, even if the underlying disease is not cured. It would be a license to discriminate against debtors based on after-the-fact justifications.

28. Second, the Debtors have been harmed economically by Covid-19 and face significant financial challenges and uncertainty. The Court will be presented with evidence on these points as well as to the continuing financial impacts of Covid-19 due to low patient volume and significant revenue declines. These declines in revenue are expected to result in liabilities to payors like Medicaid and Anthem as well as cash shortfalls as fewer accounts receivable may be generated and convert to cash. Thus, even if the Administrator's standard for irreparable harm is the correct one, the Court will be presented with evidence that satisfies it.

## V. Selected Additional Authorities Addressing PPP

29. The Debtors also wish to bring to the Court's attention favorable decisions or orders on similar issues.[4]

30. In *KP Engineering, LP v. Carranza (In re KP Engineering, LP, et al.),* Adv. No. 20-AP-3120, Docket Entry 7 and 17 (Bankr. S.D. Tx. May 6 and 18, 2020), the court entered a temporary restraining order and agreed preliminary injunction with similar terms to this Court's temporary restraining order.

31. In *Hidalgo County Emergency Service Foundation v. Carranza (In re Hidalgo Country Emergency Service Foundation)*, Adv. No. 20-AP-2006 (Bankr. S.D. Tx. May 8, 2020), the court entered a preliminary injunction with the following unique provision:

---

[4] There are some contradictory authorities. The Debtors anticipate that the Administrator will bring these to the Court's attention.

11

> No later than 5:00 p.m. (prevailing Central time) on Monday, May 11, 2020, Jovita Carranza in her capacity as Administrator for the United States Small Business Administration, shall file a sworn declaration that confirms that the SBA will honor any right, guaranty, inducement or other privilege extended to any participating lender in the Paycheck Protection Program that complies with this preliminary injunction. The failure to timely comply with this paragraph will result in the issuance of a show cause order, a requirement for personal appearance and the potential imposition of compensatory and coercive sanctions.

A declaration was submitted. This order is on appeal.

32. In *Springfield Medical Care Systems, Inc. v. Carranza (In re Springfield Medical Care Systems, Inc.)*, Adv. No. 20-AP-1004 (Bankr. D. Vt. May 7, 2020), the court determined that the CARES Act "constitutes a grant of economic aid in response to the [Covid-19] pandemic."

33. This characterization is consistent with recent comments of Senator Marco Rubio in a video that he posted at the following link on his Twitter account: https://twitter.com/marcorubio/status/1257313321272803329. At minute 1:01, Senator Rubio, who chairs the Senate committee with jurisdiction over SBA and assisted with drafting PPP, said as follows:

> It was the clear intent of those of us who wrote this law to ensure that if businesses use that money to make payroll, either now or down the road with some flexibility, that this loan would be forgivable. This was never designed to be a loan program. It was designed to be almost like a grant program. The reason why the loan provision was even put in there was to ensure that the money would towards payroll, hopefully at the front end but if not possible, then on the back end.

34. The Court can and should take judicial notice of these comments, as they are probative of Congressional intent, there is no doubt about their authenticity, and there is no other more probative evidence available on the issue that can reasonably be obtained.[5] Fed. R. Evid. 807.

---

[5] Twitter has become a tool for official and unofficial statements by governmental officials, including the President. Twitter has adopted a policy to verify as authentic accounts of public officials, a copy of which is available at this link: https://help.twitter.com/en/managing-your-account/about-twitter-verified-accounts. This policy states that the white checkmark in the blue circle after the name "Marco Rubio" on the Twitter page at the link above

## **CONCLUSION**

It is clear from the plain text of the CARES Act that the Administrator has acted outside the scope of her authority. It is also clear that she had no good reason to exclude debtors in bankruptcy proceedings from full participation in PPP. The program is intended to funnel funds through small businesses to be paid to their employees, ultimately without liability to the applicant. It makes no sense in light of this purpose, and in light of the underwriting guidance issued by the Administrator acknowledging that creditworthiness is not a factor in assessing PPP applications, for companies reorganizing in bankruptcy to be denied access to funds. Although the Administrator has since stated that she has "determined that providing PPP loans to debtors in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans[,]" her rationale is in direct contravention with all previously issued rules and guidance. It also contradicts her position that the Debtors now have too much money to demonstrate irreparable harm.

Ultimately, applicable law and the stated positions of the Administrator clearly demonstrate that there is no basis for prohibiting debtors from participating in PPP, and the SBA has exceeded its authority in doing so. The Debtors are entitled to compel the Administrator's compliance with the law and should be awarded injunctive relief.

The Debtors reserve all of their rights in the event that the Court determines injunctive relief is unavailable.

---

indicates that the account has been verified as authentic. In addition, clicking the name "Marco Rubio" directs a viewer to the Twitter feed for that account, which also contains the white checkmark and indicates it is the Senator's Twitter page.

**PENOBSCOT VALLEY HOSPITAL**

Date: May 22, 2020          /s/ Andrew C. Helman
                                                        Andrew C. Helman
                                                        Kelly W. McDonald
                                                        Katie M. Krakowka
                                                        Sage Friedman
                                                        MURRAY, PLUMB & MURRAY
                                                        75 Pearl Street, P.O. Box 9785
                                                        Portland, Maine  04104-5085
                                                        (207) 773-5651

**CALAIS REGIONAL HOSPITAL**

Date: May 22, 2020          /s/ Andrew C. Helman
                                                        Andrew C. Helman
                                                        Kelly W. McDonald
                                                        Katie M. Krakowka
                                                        Sage Friedman
                                                        MURRAY, PLUMB & MURRAY
                                                        75 Pearl Street, P.O. Box 9785
                                                        Portland, Maine  04104-5085
                                                        (207) 773-5651