## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>**PENOBSCOT VALLEY HOSPITAL,**<br><br>Debtor. | **Chapter 11**<br><br>**Case No. 19-10034** |
| **PENOBSCOT VALLEY HOSPITAL,**<br><br>Plaintiff,<br><br>v.<br><br>**JOVITA CARRANZA, in her capacity as Administrator for the U.S. Small Business Administration,**<br><br>Defendants. | **Adversary No. 20-1005** |

| | |
|---|---|
| In re:<br><br>**CALAIS REGIONAL HOSPITAL,**<br><br>Debtor. | **Chapter 11**<br><br>**Case No. 19-10486** |
| **CALAIS REGIONAL HOSPITAL,**<br><br>Plaintiff,<br><br>v.<br><br>**JOVITA CARRANZA, in her capacity as Administrator for the U.S. Small Business Administration,**<br><br>Defendants. | **Adversary No. 20-1006** |

## UNITED STATES' TRIAL BRIEF

The United States of America (the "United States"), on behalf of Jovita Carranza in her capacity as Administrator for the U.S. Small Business Administration ("SBA"), files this Trial Brief in compliance with ¶ 9 of the Order Consolidating Adversary Proceedings and Scheduling Status Conference and Trial issued on May 7, 2020. (Dkt. No. 23).

## INTRODUCTION

Plaintiffs filed their respective Complaints against SBA on April 27, 2020.  The Complaints allege substantially similar facts and allegations in their complaints.   Count I seeks issuance of a Preliminary and Permanent Injunction against SBA.  Count II seeks Declaratory Judgment.  Count III seeks remedies for alleged violation of 11 U.S.C. § 525(a) by SBA.  Count IV is a demand for issuance of a Mandamus order to SBA.  Generally, the Debtors seek to compel SBA to allow them to participate in the recently established Payroll Protection Program (PPP) under the CARES Act.

Since the United States filed its initial opposition on April 29, 2020, Dkt. 11, courts have denied injunctive relief in 10 cases in which the debtor challenged SBA's bankruptcy exclusion: *Abe's Boat Rentals, Inc. v. Carranza*, Adversary No. 20-01029 (Bankr. E.D. LA); *Okorie v. SBA*, Adversary No. 20-6015-KMS (Bankr. S.D. Miss.); *Inland Family Practice Center, LLC v. SBA*, Adversary No. 20-6016-KMS (Bankr. S.D. Miss.); *NAI Capital v. Carranza*, Adversary No. 20-01051 (Bankr. C.D. CA); *PPV, Inc. and Bravo Environmental NW, Inc. v. SBA and Carranza*, Adversary No. 20-3054 (Bankr. D. OR); *Schuessler et al. v. SBA (In re Schuessler et al.)*, Adversary No. 20-2065 (Bankr. E.D. Wis.); *Steffen et al. v. SBA (In re Steffen et al.)*, Adversary No. 20-2068 (Bankr. E.D. Wis.); *Thull Farms, LLC v. SBA (In re Thull Farms, LLC)*, Adversary No. 20-2069 (Bankr. E.D. Wis.); *Jack County Hosp. Dist. v. SBA*, Adversary No. 20-04035-mxm

(Bankr. N.D. Tex.); *Starplex Corp. v. Carranza*, Adversary No. 2:20-ap-00095-DPC (Bankr. D. Ariz.). During this time, only one court has awarded injunctive relief. *Weather King Heating & Air, Inc. v. Carranza*, Adversary No. 20-5023 (Bankr. N.D. Ohio) (debtor who obtained PPP loan *while in bankruptcy* sued to enjoin the SBA).

This Brief addresses matters not fully briefed previously and specifically addresses the question the court indicated it wanted additional briefing on, namely, whether the Administrator exceeded her statutory authority and violated her duty such that the issuance of a writ of mandamus is warranted.

As an initial matter, this Court lacks jurisdiction to adjudicate this adversary proceeding because the Small Business Act does not contain a waiver of sovereign immunity that allows for injunctive relief against the SBA. Counts One, Two and Four of Plaintiffs' Complaint seek injunctive relief that is, at best, related to jurisdiction flowing from the claims of violation of 11 U.S.C. § 525(a). Section 525(a) is not applicable to the PPP which is a loan program, and clearly not similar to a "license, permit, charter [or] franchise." Thus this bankruptcy court lacks jurisdiction to order injunctive relief on the claim.

Assuming *arguendo* that Plaintiff can get past the jurisdictional hurdles, it cannot meet the standard articulated by the First Circuit that would entitle it to injunctive relief. First, Plaintiffs are not likely to succeed on the merits, because its claims are facially invalid. Counts One, Two and Four appear to be based on some type of Administrative Procedure Act (APA) claim. However, they fail to set forth allegations that are sufficient to allege such a violation. The SBA acted wholly and appropriately within its delegated authority in implementing the PPP. The SBA addressed the bankruptcy exclusion in two separate agency rules. Congress, through the CARES

Act and Small Business Act, explicitly delegated authority to the SBA Administrator to issue those rules.

Plaintiffs also fail to proffer all but the barest conclusory assertions to support its claim for irreparable harm, which is far from sufficient to support Plaintiffs' claim for injunctive relief. Moreover, the balance of harms weighs against injunctive relief. Finally, awarding an injunction here would be against the public interest.

In implementing the PPP, the SBA made a policy decision to limit PPP loans to those who had not filed for bankruptcy; in essence indicating a preference in distributing limited funding. Plaintiffs ask the Court to replace the SBA's stated policy with the Plaintiff's own policy preferences. Doing so would eviscerate Congress's choice to vest with the SBA the authority to implement the PPP and oversee its own lending program.

## ARGUMENT

### I.     LEGAL STANDARD

"A preliminary injunction is an 'extraordinary and drastic remedy'" that is "never awarded as of right," *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citation omitted), and "may only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *See also, e.g.*, *People's Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8-9 (1st Cir. 2012) ("A preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right."). Thus, a plaintiff seeking a preliminary injunction "must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *People's Fed. Sav. Bank*, 672 F.3d at 8-9 (internal quotation marks omitted). Moreover, the party seeking the injunction carries the burden of persuasion to demonstrate, by a clear showing, that the necessary

elements are satisfied.  *Id.* at 9; *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007);

*Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor, Inc.*, 564 F. Supp. 2d

63, 66 (D. Me. 2008).

Defendant has already briefed this topic in its initial opposition and will not repeat the

same ground except to remind the court that the status quo here, is that Plaintiffs are excluded

from the PPP program because they are in active bankruptcy.  Because Plaintiffs seeks to disrupt

this status quo, it bears a heightened standard of "mak[ing] a strong showing both with regard to

the likelihood of success on the merits and with regard to the balance of harms." *O Centro*, 389

F.3d at 976; *see also Gonzalez-Droz v. Gonzalez-Colon*, 573 F.3d 75, 79 (1st Cir. 2009).

For the reasons that follow, Plaintiff has not carried these heavy burdens.

## II.    PLAINTIFF FAILS TO ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS.

### A.    The Small Business Act's Narrow Sovereign Immunity Waiver Precludes the Injunctive Relief Plaintiff Seeks.

Only Congress can waive sovereign immunity.  *United States v. Sherwood*, 312 U.S. 584,

589 (1941).  And statutory waivers of sovereign immunity must be express and unequivocal.

*United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003); *Lane v. Pena*, 518

U.S. 187 (1996); *United States v. Nordic Vill., Inc.*, 503 U.S. 30 (1992).  Because sovereign

immunity waivers must be explicit and should be narrowly construed, any ambiguity must be

resolved in the government's favor.  *Nordic Vill., Inc.*, 503 U.S. at 34; *Department of the Army v.

Blue Fox, Inc.*, 525 U.S. 255 (1999).

In its Complaints, Plaintiffs do not specifically allege that Congress has waived the

SBA's sovereign immunity, or present the Court with statutory authority for such a waiver.

Plaintiffs claim only that the "Administrator can sue and be sued on behalf of the SBA in any

court of general jurisdiction." Compl. ¶ 6. While the Small Business Act does contain a waiver

of sovereign immunity, that waiver is limited. It provides that the SBA may:

> sue and be sued in any court of record of a State having general
> jurisdiction, or in any United States district court, and jurisdiction is
> conferred upon such district court to determine such controversies without
> regard to the amount in controversy; *but no attachment, injunction,*
> *garnishment, or other similar process, mesne or final, shall be issued*
> *against the [agency] or [its] property[.]*

15 U.S.C. § 634(b)(1) (emphasis added).

This statute waives sovereign immunity for suits seeking damages or declaratory relief,

but precludes suits seeking injunctive or any similar relief against the SBA. *Enplanar, Inc. v.*

*Marsh*, 11 F.3d 1284, 1290 (5th Cir. 1994); *J.C. Driskill, Inc. v. Abdnor*, 901 F.2d 383, 386 (4th

Cir. 1990); *Mar v. Kleppe*, 520 F.2d 867, 869 (10th Cir. 1975) ("The decisions have uniformly

considered that this statute effectively precludes injunctive relief against the Administrator.")

(collecting cases); *United States v. Mel's Lockers, Inc.*, 346 F.2d 168, 170 (10th Cir. 1965)

(waiver of sovereign immunity in Bankruptcy Act did not override prohibition on injunctions,

because the language of the sovereign immunity waiver in the Small Business Act "is too clear

for misunderstanding that there is no waiver by Congress as to injunction suits"); *Keita v. U.S.*

*Small Business Admin.*, No. 07-CV-4958 (ENV)(LB), 2010 WL 395980, at *4 (E.D.N.Y. Feb. 3

2010) (holding that plaintiff's "request that the Court review and reverse SBA's denial of his

loan applications and to order SBA to approve them instead is beyond the Court's subject matter

jurisdiction," as the SBA "prohibits district courts from entering orders of . . . injunction"

(internal quotation marks omitted)).

As the Fourth Circuit explained in *Driskill*, "courts have no jurisdiction to award

injunctive relief against the SBA. Congress apparently included *this limitation to avoid potential*

*interference with and obstruction of the SBA's operations*, and the prohibition extends not only

to attachment, injunction, and garnishment, but also to 'other similar process.'"  901 F.2d at 386

(emphasis added).  The Fourth Circuit distinguished the language in the SBA waiver of

immunity from other agencies sovereign immunity waiver provisions, such as the Postal Service,

which did not exempt such injunctions.  *Id.*

Plaintiffs assert only, as described above, that the "SBA can sue and be sued in a court of

general jurisdiction."  Compl. ¶ 6.  Although Plaintiffs do not argue that any exception to the

limitation on sovereign immunity waivers under 15 U.S.C. § 634(b)(1) could apply here, it is

nevertheless important to note that the First Circuit's only recognized limited exception to the

prohibition of injunctive relief against SBA is inapplicable here.  *See Ulstein Mar., Ltd. v. United

States*, 833 F.2d 1052 (1st Cir. 1987).  The  First Circuit made clear that the general rule is that

"the legislative history of earlier statutes containing the identical wording [as § 634(b)(1)]

indicates that it was intended to keep creditors or others suing the government *from hindering

and obstructing agency operations through mechanisms such as attachment of funds.*"  833 F.2d

at 1056-57.  Thus, "[t]he no-injunction language *protects the agency from interference with its

internal workings by judicial orders attaching agency funds, etc.*"  *Id.* (emphasis added).  Here,

the relief Plaintiff is seeking directly interferes with the internal workings of a SBA program (as

detailed below).  That is *precisely* what section 634(b)(1) was designed to stop.

Similarly, the First Circuit's rationale underlying the *Ulstein Marine* decision does not

apply in this case because in that case, the dispute arose out of a government contract dispute for

which it was determined that an independent sovereign immunity waiver existed and should be

applied to avoid an "irrational anomaly" between the sovereign immunity waiver in the Court of

Federal Claims and the district courts.  *Id.* at 1058; *Turner v. U.S. Small Business Admin.*, No.

4:00-CV-833 CAS, 2001 WL 1346016 (E.D. Mo. Sept. 10, 2001) (distinguishing *Ulstein*).

Plaintiffs point to no other sovereign immunity waiver that would permit an injunction to be

awarded against the SBA under the APA here.  And although 11 U.S.C. § 106 waives sovereign

immunity for some claims under section 525, that sovereign immunity waiver cannot be said to

"unequivocally" permit claims for injunctions that would not be permissible under 15 U.S.C.

§ 634(b), because section 106(a)(4) limits that sovereign immunity waiver  to exclude claims for

relief that would not be available against a governmental agency outside of bankruptcy.[1]  11

U.S.C. § 106(a)(4) ("The enforcement of any such order, process, or judgment against any

governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such

governmental unit."); *see Kuhl v. United States*, 467 F.3d 145, 148-49 (2d Cir. 2006) (limitations

on sovereign immunity waiver under the Tax Code barred suit in bankruptcy court brought by

debtor against IRS); *In re Rivera Torres*, 432 F.3d 20 (1st Cir. 2005) (noting that types of relief

encompassed in the sovereign immunity waiver may be limited by section 106(a)(4) in

determining that sovereign immunity barred award of emotional distress damages against IRS).

Notably, Congress also purposely excluded section 541 from the list of Bankruptcy Code

sections falling within the waiver of sovereign immunity under section 106(a)(1), clarifying that

the waiver does not broadly permit suits against the government just because the claims may

constitute property of the estate.  140 Cong. Rec. H10, 766 (daily ed. Oct. 4, 1994) ("This allows

the assertion of bankruptcy causes of action, but specifically excludes causes of action belonging

to the debtor that become property of the estate under section 541.").

---

[1] Also, section 106(a)(5) clearly provides that this sovereign immunity waiver does not provide a
substantive claim for relief or subject matter jurisdiction where it does not otherwise lie.  11
U.S.C. § 106(a)(5) ("Nothing in this section shall create any substantive claim for relief or cause
of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or
nonbankruptcy law.").

Plaintiffs have not alleged that section 105 of the Bankruptcy Code applies. While Rule

7065 of the Federal Rules of Bankruptcy Procedure grant authority to this Court to issue an

injunction, *see* Compl. ¶ 34, it is equally unavailing.  Only Congress can waive sovereign

immunity.  *United States v. Sherwood*, 312 U.S. 584, 589 (1941).  And statutory waivers of

sovereign immunity must be express and unequivocal.  *See*, *e.g.*, *United States v. White

Mountain Apache Tribe*, 537 U.S. 465, 472 (2003); *Lane v. Pena*, 518 U.S. 187 (1996); *Nordic

Vill., Inc.*, 503 U.S. at 33.  Because sovereign immunity waivers must be explicit and should be

narrowly construed, any ambiguity must be resolved in the government's favor.  *Nordic Vill.,

Inc.*, 503 U.S. at 34; *Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999).

### B.    Plaintiff's Presumed APA Claim Will Fail

As noted above, Plaintiffs' Counts I and II, Compl. at 6-7, do not identify any statute

permitting or supporting these claims for relief, nor does Plaintiff's Count IV claim, titled

"Mandamus," *id.* at 8-9.  However, the language and tenor of this part and the lion's share of the

allegations outlining its theory in the Complaint look and sound like an Administrative Procedures

Act claim, minus the forthright assertion that the Administrator's rule making parties in active

bankruptcies ineligible for a PPP loan was "arbitrary and capricious, an abuse of discretion, or

otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

As set forth in the following analysis, this Court does not have jurisdiction over

Plaintiff's APA claims and the SBA actions are in accordance with law.

### 1.    The Bankruptcy Court Lacks Authority to Adjudicate the Validity of Agency Rulemaking.

Although bankruptcy courts have jurisdiction pursuant to 28 U.S.C. § 1334(b) to hear

matters that are related to a case arising under Chapter 11, they possess authority only to enter

findings of fact and conclusions of law if the matters being heard are non-core proceedings.  28

U.S.C. § 157(c)(1).  "Absent consent in a 'non-core' proceeding, a bankruptcy court can hear the

civil proceeding but must submit proposed findings of fact and conclusions of law to the district

court for de novo review and rendition of a final judgment."  *In re Dune Energy, Inc.,* 575 B.R.

716, 724 (Bankr. W.D. Tex. 2017) (citations omitted); *In re LM Waste Service Corp.*, 562 B.R.

845, 850 (Bankr. D.P.R. 2016); *see Wood v. Wood (In re Wood)*, 825 F.2d 90, 95 (5th Cir. 1987).

Core matters are defined in 28 U.S.C. § 157(b)(2).  Non-core proceedings are those that do not

depend on the bankruptcy laws for their existence and that could proceed in another court even in

the absence of bankruptcy.

Plaintiff's APA claims do not arise in or under Title 11, but rather arise from Plaintiff's

assertion that the SBA exceeded the statutory authority provided it in the CARES Act by

excluding entities in bankruptcy from the PPP.  As such, the Bankruptcy Court may, at most

issue findings of fact and conclusions of law, which must then be reviewed by the district court

before any order may be entered.  This Court thus lacks jurisdiction to award injunctive relief on

the APA claims.  *Aimtree Co. v. AT & T Corp. (In re Aimtree Co.)*, 202 B.R. 154, 156 (D. Kan.

1996) (noting "bankruptcy court lacked statutory authority to enter an injunction in this 'non-

core' proceeding").  Judge Shannon agreed:  "If it's not bankruptcy discrimination under Section

525, then I would likely lack core jurisdiction to enter the relief that's requested."  COSI, Inc. Tr.

at 56:17-19. [SBA301].

Moreover, and respectfully, the United States does not consent to this Court's entry of a

final order on Plaintiff's APA claims, which exceed the Court's constitutional authority as an

Article I court.  Under the Supreme Court's decision in *Stern v. Marshall*, 564 U.S. 462 (2011),

this Court lacks the constitutional authority to issue any final order on Plaintiff's APA claims

because they seek adjudication of private law claims to augment the estate and, because SBA has

not filed a claim in this case, are not compulsory counterclaims that must be adjudicated in the

claims resolution process. *Id.* at 499; s*ee also In re Millennium Lab Holdings II, LLC*, 945 F.3d

126, 134 (3d Cir. 2019). The Court's lack of Constitutional authority is particularly apparent

here where Plaintiff asks the Court to arrogate the congressionally granted authority of another

Article I federal agency, the SBA, to interpret and implement the section 7(a) loan guarantee

program. Accordingly, any request by Plaintiff for a final order on its APA claim should be

rejected.

2.    The Bankruptcy Exclusion is Authorized by Explicit Rules and Congress
Delegated the Administrator Broad Discretion to Issue Those Rules.

Plaintiffs will not succeed on its claims that the SBA exceeded statutory authority

because the claims lack any merit. Plaintiffs appear to contend that the bankruptcy exclusion

from the PPP must be unlawful because it is not specifically described in the CARES Act. *See*

Compl. ¶¶ 34-35. But the fact that the CARES Act is silent on bankruptcy ineligibility[2] is far

from dispositive.

A court's review of an agency's interpretation of the statutes it is charged with

administering is governed by the two-step standard of review established in *Chevron, U.S.A.,*

*Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Com. of Mass. v.*

*Lyng*, 893 F.2d 424, 428 (1990). Under the first step, the court determines "whether Congress

has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. If Congress has

so spoken, "that is the end of the matter; for the court, as well as the agency, must give effect to

the unambiguously expressed intent of Congress." *Id.* at 842-43. But "if the statute is silent or

ambiguous with respect to the specific issue, the question for the court is whether the agency's

---

[2] The PPP Application Form includes other limitations not specifically addressed in the CARES
Act. For instance, the PPP excludes entities that have been debarred from federal programs. *See*
SBA Form 2483, at 1[SBA308];SBA Form 2484, at 2 [SBA309].

answer is based on a permissible construction of the statute." *Id.* at 843.  As long as the agency's construction of an ambiguous statute is permissible, it will be upheld.  *Craker v. Drug Enforcement Admin.*, 714 F.3d 17, 26 (1st Cir. 2013).  An agency's construction is impermissible, and therefore may be set aside by a court, "if it is arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, or otherwise not in accordance with the law." *Id.*  An agency's construction is deemed arbitrary and capricious if the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*  Provided that the agency's construction was not arbitrary and capricious, however, a court "may not substitute [its] judgment for that of the agency, even if [it] disagree[s] with [the agency's] conclusion." *Id.; see United States v. Mead Corp.*, 533 U.S. 218, 229 (2001) ("[A] reviewing court has no business rejecting an agency's exercise of its generally conferred authority to resolve a particular statutory ambiguity simply because the agency's chosen resolution seems unwise.").

The SBA was delegated broad authority to implement its lending programs and the bankruptcy exclusion falls within this authority.  The SBA Administrator is explicitly empowered to "make such rules and regulations as [she] deems necessary to carry out the authority vested in [her]," and in addition to "take any and all actions … [that] [she] determines…are necessary or desirable in making…loans." 15 U.S.C. §§ 634(b)(6), (7).  The CARES Act did not amend or otherwise limit this authority.  Instead, Congress explicitly placed the PPP within the section 7(a) lending program, thus vesting the Administrator with broad discretion over the PPP.  Indeed, rather than curtailing the Administrator's discretion over the

PPP, the CARES Act expanded it, by giving the Administrator authority to issue new regulations and rules to implement the PPP without complying with typical notice and comment requirements. CARES Act § 1114; *see Trudy's Texas Star v. Jovita Carranza*, Adv. No. 20-01026, Bkr. No. 20-10108, Transcr. pp. 44-46 (May 7, 2020 Bench Decision) (J. Mott) [SBA303].

The Administrator exercised this explicit delegation of authority to issue two rules addressing the bankruptcy exclusion. The First Interim Final Rule incorporated the PPP application form and the bankruptcy exclusion provided on that form. First Interim Final Rule, 85 Fed. Reg. at 20,815. [SBA310]. The Fourth Interim Final Rule further addresses ineligibility of entities in active bankruptcy and describes the policy reasons animating that agency decision. Fourth Interim Rule, 85 Fed. Reg. at 23,451. [SBA311]. Issuing these rules was well within the authority Congress delegated to the SBA.

Discussing the Fourth Interim Final Rule, Judge Shannon explained: "But the recent rule is abundantly clear that the administrator has, in fact, determined to exclude debtors from participation in the PPP. As noted, I do not agree with that decision. I am dismayed by the consequences of that decision here, but it is entitled—but the SBA is entitled to a measure of deference and, again, I'm not authorized to substitute my preference or judgment for those of the SBA, nor can I find that the decision is arbitrary and capricious." Ex. 1, COSI, Inc. Tr. at 58:11-18.[SBA301].[3]

---

[3] "There are circumstances attendant to making loans or providing financial accommodations to a debtor in possession that do not exist when dealing with a nondebtor. . . . [T]here is at least a possibility here . . . that PPP funds could go to uses that were not intended by the CARES Act; for example, to a secured lender in the event of a post-loan default." Ex. 1, COSI, Inc. Tr. at 58:19 – 59:2.

In any event, nothing in the CARES Act precludes excluding bankrupt entities from the PPP; the law instead gives the Administrator broad discretion.  Indeed, the CARES Act builds upon section 7(a) lending program, which explicitly considers the borrower's bankruptcy history to ensure that loans be of "sound value . . . as reasonably to assure repayment."  15 U.S.C. § 636(a)(6); SBA Form 1919, Questions 6 & 24 (considering whether applicant, its owners, affiliates or any business controlled by applicants principals have "ever" been in bankruptcy). [SBA304].

The bankruptcy exclusion in the PPP stems from these pre-existing section 7(a) requirements.  The pre-existing bankruptcy questions of section 7(a) were "streamlined" for the PPP to meet SBA's determination that PPP loans must be processed "expeditiously."  First Interim Final Rule, 85 Fed. Reg. at 20,811. [SBA310]. To streamline the processing, the SBA eliminated the requirement to perform individual credit review for each PPP loan, as with other 7(a) loans.  Instead, the PPP program imposed a bright line rule to exclude those in bankruptcy through its official application form.

This streamlining of the consideration of bankruptcy status through the PPP application form is wholly within the SBA's delegated discretion.  The CARES Act did not amend the "shall" requirement in 15 U.S.C. § 636(a)(6) that loans be of "sound value."[4]  The CARES Act instead explicitly left that provision unaltered, along with section 7(a) lending procedures more broadly, except where specifically altered.  CARES Act § 1102(a)(2) (providing that "[e]xcept as otherwise provided in this paragraph, the Administrator may guarantee covered loans under the

---

[4] Contrast Congress's use of "shall" in requiring the SBA to assure "sound value . . . to assure repayment" in 7(a) loans with its use of "may" to describe the non-mandatory duty to guarantee PPP loans. *See* CARES Act § 1102(a)(2) (providing that "the Administrator *may* guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection" (emphasis added)).

same terms, conditions, and processes as a loan made under this subsection"); 15 U.S.C.

§ 636(a)(36)(B). The bankruptcy exclusion reasonably reconciles the "shall" requirement

concerning the sound value of loan-making under 15 U.S.C. § 636(a)(6) with the obligation to

expeditiously process CARES Act PPP loans by replacing the case-by-case consideration of

bankruptcy history with a bright line rule on the application form. *See Trudy's*, *supra* at 45.

[SBA303].

Plaintiffs' argument rests almost entirely on the presumption that Congress intended that

bankrupt debtors obtain DIP financing through PPP loans, despite Congress's utter silence on that

issue in passing the PPP. Now, however, the House has addressed this issue. In the HEROES Act

(H.R. 6800), introduced on May 12, 2020 and passed by the House on May 15, 2020, the House

specifically acknowledges that bankrupt debtors are *not* eligible for PPP loans. In Division I,

Section 90001(c), the House bill would amend the PPP:

> INCLUSION OF CRITICAL ACCESS HOSPITALS IN THE
> PAYCHECK PROTECTION PROGRAM.—Section 7(a)(36)(D) of the Small
> Business Act (15 U.S.C. 636(a)(36)(D)) is amended by adding at the end the
> following new clause:

>> ''(vii) INCLUSION OF CRITICAL ACCESS HOSPITALS.—
>> During the covered period, any nonprofit organization that is a critical
>> access hospital (as defined in section 1861(mm) of the Social Security Act
>> (42 U.S.C. 1395x(mm))) shall be eligible to receive a covered loan,
>> regardless of the status of such a hospital as a debtor in a case under
>> chapter 11 of title 11, Unites States Code, or the status of any debts owed
>> by such a hospital to the Federal Government.''.

H.R. 6800, 116th Congress § 90001(c) (as passed by House, May 15, 2020).

The House's recognition that additional legislation is required in order to permit a small

class of bankrupt debtors to be eligible for a PPP loan demonstrates the House's understanding

that bankrupt debtors could not receive a PPP loan without additional legislation. Contrast

*Mississippi Poultry Association, Inc. v. Madigan*, 992 F.2d 1359 (5th Cir. 1993), in which the

court rejected the Secretary of Agriculture's use of the phrase "at least equal to" in regulations interpreting an inspection standard in the Poultry Products Inspection Act ("PPIA"), which used the phrase "the same as."  The Fifth Circuit in *Mississippi Poultry* did not have an amendment to the PPIA—like the CARES Act here—to look to for guidance in interpreting the language at issue, so it looked to Congress' expression of intent in enacting separate legislation, in which it "stated emphatically and unequivocally that the Agency has misinterpreted the 'same as' standard."  *Id.* at 1364.  Congress "is not required to respond to the Agency's disregard of unequivocally expressed congressional intent by amending a statute that is both clear and unambiguous on its face."  *Id.* at 1364.

While Congress focused intensely on enacting the CARES Act immediately after the coronavirus pandemic struck a blow to our economy, and has already modified it since its enactment, Congress has given no indication that the SBA misinterpreted Congress' intent in adopting a PPP application that excludes bankrupt debtors.  The *only* official statement the House or Senate has made in regard to the bankruptcy exclusion is HEROES Act section 90001(c), which instead emphatically and unequivocally confirms that Congress (or, at least, the House) did not intend bankrupt debtors to receive PPP loans and that, in order to except one small class of debtors, it would take legislation to achieve that outcome.

Similarly, despite weeks of argument by bankrupt debtors nationwide that the PPP is a "grant" program that is protected from discrimination by section 525(a), the House, in the HEROES Act, unequivocally confirms that the PPP is a loan program.  *See* § 90001(c) ("loan"); § 90001(e)(1)(C) (same); § 90001(e)(2)(C) (same); § 90001(e)(3) (same);  § 90001(f) (same); § 90001(g) (same); § 90001(i)(1) (same); § 90001(i)(2) (same); § 90001(i)(3) (same); § 90001(j)(1) (same); § 90001(k) (same); § 90002 (same).

16

Section 90001(k) specifically demonstrates that Congress (or, at least, the House) knows how to distinguish between grant and loan programs, including when the PPP loan program is involved. Subsection (k) appends the PPP to provide technical assistance for community financial institutions in which Treasury "shall use $1,000,000,000 . . . to provide *grants* to [certain] financial institutions . . . to ensure such institutions can update their systems . . . and efficiently provide *loans* that are guaranteed under" the PPP. (Emphasis added).

Plaintiffs ask this court to impose its own preferred solution to these statutory requirements. But Congress delegated the SBA authority to implement the PPP, and otherwise gave the SBA broad discretion over its lending programs. The Court must defer to that discretion. *See Bellum*, 407 F.3d at 739 ("the decision of Congress not to define….constitutes an implicit statutory gap the [Administrator] is authorized to fill").

## C.    Plaintiff's Anti-Discrimination Claim Will Fail Because Section 525 of the Bankruptcy Code Does Not Apply to Loans.

Section 525(a) of the Bankruptcy Code prohibits a governmental unit from denying, revoking, suspending, or refusing to renew "a license, permit, charter, franchise, or other similar grant" on the basis of being or having been a debtor in bankruptcy. By its plain language, the prohibition in 525(a) does not apply to lending or loan guarantees. Indeed, the only mention of lending in section 525 is found in subsection (c), added in 1994 to address government student loan programs. 103 P.L. 394 § 313. Subsection (c) provides that "[a] governmental unit that operates a student grant or loan program . . . may not deny a student grant, loan, loan guarantee, or loan insurance to a person that is or has been a debtor under this title or . . . under the Bankruptcy Act." 11 U.S.C. § 525(c). If section 525 applied to government guaranteed loans more broadly, Congress would not have needed to amend the law to include government student loan programs. And in amending the law to address government student lending, Congress could

have addressed other government lending programs, but chose not to.  Under long-established,

binding precedent, Congress should be presumed to have acted intentionally in such

circumstances.  *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537 (1994) ("[I]t is generally

presumed that Congress acts intentionally and purposely when it includes particular language in

one section of a statute but omits it in another."); *Lopez-Soto v. Hawayek*, 175 F.3d 170, 173 (1st

Cir. 1999) ("Courts have an obligation to refrain from embellishing statutes by inserting

language that Congress opted to omit.").

Each circuit that has addressed this issue has determined that a government entity

conditioning a loan on whether the party receiving the loan is in bankruptcy *does not* violate

section 525 because a loan is not "grant" that is similar to a "license, permit, charter, [or]

franchise."  *See*, *e.g.*, *Ayes v. U.S. Department of Veterans Affairs*, 473 F.3d 104, 110 (4th Cir.

2006) (holding that veteran loan guarantee was not within the scope of section 525); *Toth v.

Michigan State Housing Development Authority*, 136 F.3d 477, 480 (6th Cir. 1998) (holding that

section 525 does not apply to state issued home improvement loans); *Watts v. Pennsylvania

Housing Fin. Co.*, 876 F.2d 1090, 1094 (3d Cir. 1989) (holding that an emergency home loan

assistance program in which payments were suspended if an entity filed for bankruptcy and the

automatic stay was not lifted did not violate section 525).  In *In re Goldrich*, 771 F.2d 28 (2d Cir.

1985), the Second Circuit reached the same conclusion in a case concerning student loans prior

to the amendment of section 525 in 1994 to include 525(c).  It held that omission of post-

discharge credit arrangements from language of section 525 was intentional and declined to

extend section 525 to student loan guarantees, explaining:  "*A credit guarantee is not a license,

permit, charter or franchise; nor is it in any way similar to those grants.*  Had Congress intended

18

to extend this section to cover loans or other forms of credit, it could have included some term

that would have supported such an extension." *Id.* at 30 (emphasis added).

A number of district and bankruptcy courts have reached the same conclusion. *See, e.g.*,

*In re Jasper*, 325 B.R. 50, 55 (Bankr. D. Me. 2005) (revoking credit union privileges on the basis

of filing for bankruptcy did not violate section 525); *United States v. Cleasby*, 139 B.R. 897, 900

(Bankr. W.D. Wis. 1992) (holding a loan is not a "similar grant" within the meaning of section

525 and declining to extend section 525 protection to applications for debt restructuring); *Lee v.*

*Yuetter*, 106 B.R. 588, 592 (Bankr. D. Minn.1989) (declining to extend section 525 protection to

applications for debt restructuring program and analogizing program to extensions of credit),

*aff'd*, 917 F.2d 1104 (8th Cir.1990).

A bankruptcy court in the District of Utah extensively reviewed the statutory history of

11 U.S.C. § 525 and then-existing case law. *In re Rees*, 61 B.R. 114, 116-24 (Bankr. D. Utah

1986). The court explained that section 525 "intended to codify the rule of *Perez v. Campbell*,

402 U.S. 637 (1971), which held that a state could not frustrate the Congressional policy of a

fresh start for a bankrupt [debtor] by refusing to renew a driver's license based on a discharged

judgment resulting from an automobile accident." *In re Rees*, 61 B.R. at 116-17. An early

proposal for the provision contained broad language prohibiting "discriminatory treatment

because he, or any person with whom he is or has been associated, is or has been a debtor or has

failed to pay a debt discharged in a case under the Act." *Id*. "The credit industry was extremely

concerned about the wording . . . , and urged that it be redrafted to limit its application to *Perez*-

type situations and prevent its application in the field of credit granting." *Id*. at 118. The

provision was subsequently redrafted to hue more closely to the *Perez* decision, prohibiting

discrimination in the issuance of "a license, permit, charter, franchise, or other similar grant." *Id.*

19

The PPP is in no way like the archetypal driver's license in *Perez*, nor the other items enumerated in section 525(a). The PPP does not provide a right to engage in a specific activity or profession, like a "license, permit, charter, [or] franchise." 11 U.S.C. § 525(a); *see Ayes*, 473 F.3d at 109 (the enumerated items in 525(a) "implicate 'government's role as a gatekeeper in determining who may pursue certain livelihoods' . . . and show that Congress intended § 525(a)'s protections to be limited to situations sufficiently similar to *Perez*" (quoting *Toth*, 136 F.3d at 480)); *Watts*, 876 F.2d at 1093 ("[T]he items enumerated [in section 525(a)] are in the nature of indicia of authority from a governmental unit to the authorized person to pursue some endeavor."). The PPP operates to provide emergency funding to certain eligible small businesses. Business that are excluded from funding are not prohibited from operating, as with a refusal to provide a license, permit, charter or franchise. And, unlike the archetypal driver's license, where the state is the sole entity to provide licensing, the PPP is not the sole source of funding. Indeed, entities in active bankruptcy may be eligible for other relief under the CARES Act itself, including an Emergency Economic Injury Disaster Loan. *See* CARES Act § 1110.[5]

In *COSI, Inc.*, Judge Shannon rejected the debtors' claim of section 525 discrimination:

> I am not satisfied that eligibility to participate in a loan program or a financial
> grant program, such as the PPP, is, in fact, a covered condition or act under
> Section 525 or, more directly, that a government entity cannot consider

---

[5] The PPP is indisputably a lending and loan guarantee program. *See e.g.*, CARES Act §§ 1102(a)(2) (addressing "covered loans"), (b) (appropriated funding available "for commitments for general business loans authorized under section 7(a) of the Small Business Act, including loans made under paragraph (36) of such section [PPP loans]"). Plaintiff concedes as much. *See, e.g.*, Compl. ¶ 14 (noting that "[s]ection 1102 of the CARES Act established the Paycheck Protection Program . . . as a convertible loan program under § 7(a) of the Small Business Act" and discussing the involvement of a "lender" and as SBA's "guarantee [of] the loan"). Even if one assumes that the PPP loan guarantees are so generous as to be effectively grants of money, the question of whether the PPP extends loan guarantees or grants is not relevant here. The proper question is whether the PPP is "similar to a license, permit, charter, [or] franchise." 11 U.S.C. § 525(a). As described above, the PPP is not similar to those enumerated items.

bankruptcy as a dispositive condition in evaluating whom to offer loans or grants. The case law regarding 525 focuses typically on permits, licenses, necessary government authorizations to conduct business or perform acts. Neither the case law, nor Section 525 precludes the SBA from imposing a bankruptcy-related condition or criteria within the context of the PPP.

. . . In reading Section 525, I don't read the word "grant" as being an economic grant, consistent with the concepts offered by the debtor. It is conditioned or qualified by the prior words and it's referred to as permits, franchises, licenses, or other similar grant. This is not about a money-grant program.

Ex. 1; COSI, Inc. Tr. at 55:17 – 57:5.[6]

The PPP is indisputably a lending and loan guarantee program that falls outside of section 525. The gravamen of Plaintiff's argument is that PPP loan guarantees are so generous as to be effectively "grants." Compl. ¶¶ 14, 50. This argument rests upon a factual error that the loans and loan guarantees at issue under the PPP will necessarily be 100 percent forgiven at some point in the future. But to qualify for complete or partial loan forgiveness, a recipient of the PPP loan must meet certain requirements, such as utilizing seventy-five percent of the funds for payroll. *See* First Interim Final Rule § 2(o).[SBA310]. It is only at a later date that all or part of the loan would become forgivable. Even if some of the loan is forgiven (a fact yet to be determined for any particular loan), it is possible that some portion might not be, and that remaining portion will continue to be payable as a loan. In other words, there is no question that funds provided pursuant to the PPP are currently in the first instance structured as loans and loan guarantees— and no decision on whether to forgive these loans will be made until there is a subsequent determination that the loan recipient complied with PPP requirements to make all or part of the

---

[6] In rejecting debtors' section 525 claim, Judge Shannon noted "by analogy that the Court lacks the power to order someone in routine circumstances to lend or to continue to lend money under the Bankruptcy Code, pursuant to Bankruptcy Code Section 365(c), and I acknowledge that that is not exactly what this debtor is asking for, since what they really want is the opportunity to be considered as an applicant, but nevertheless, it is still a significant, perhaps attenuated point." Ex. 1, COSI, Inc. Tr. at 56:9-16. [SBA301].

loan forgivable.  The circumstances may make recipients unable or unwilling to meet these

requirements for complete or partial loan forgiveness.  Plaintiffs simply ignores these aspects of

the program and the Administrator's interpretation and application of the CARES Act as a loan

program in contending that the PPP is not a loan.

Furthermore, the contention that the PPP provides "grants" and not loans is directly

contrary to the conclusions reached by Congress and the SBA Administrator.  Congress

explicitly referred to the PPP as a loan program in the CARES Act.  *See e.g.*, CARES Act

§§ 1102(a)(2) (addressing "covered loans"), (b) (appropriated funding available "for

commitments for general business loans authorized under section 7(a) of the Small Business Act,

including loans made under paragraph (36) of such section [PPP loans]").  And the SBA

Administrator has resolved any ambiguity as to whether funds disbursed under the PPP are loans.

For example, Section 1(a) of the Fourth Interim Final Rule provides guidance on promissory

notes and refers back to guidance dated April 8, 2020 that sets forth that lenders can use the SBA

Standard Form 147 for a promissory note, which is the same form that lenders use for a standard

non-PPP section 7(a) loan.  The First Interim Final Rule further made clear that PPP loans can be

sold into a secondary market.  First Interim Final Rule, 85 Fed. Reg. at 20815.  Thus, both

Congress and the SBA Administrator have concluded that the PPP program was a loan and loan

guarantee program.  This Court should afford deference to the conclusions of Congress and the

SBA rather than adopt the construction of the PPP offered in litigation by Plaintiff.

Beyond that, even if Plaintiff were correct that the PPP provides "grants" and not loans or

loan guarantees, the PPP still would not fall within the scope of section 525(a).  The proper

question is not whether the PPP is a grant, but whether it is a grant "similar to a license, permit,

charter, [or] franchise."  11 U.S.C. § 525(a).  Notably, the plaintiffs in *Goldrich*, *Watts*, *Ayes*, and

*Toth* (discussed *supra*), all attempted to make a similar argument that the loan program at issue

constituted a "grant."  But these courts rejected such a framing, explaining that even if the loan

program at issue was considered a "grant," it was not a grant similar to "a license, permit,

charter, [or] franchise."  *See*, *e.g.*, *Watts*, 876 F.2d at 1093 ("[A] HEMAP loan simply is not a

'license, permit, charter, franchise or other similar grant.'  Indeed, it seems perfectly clear that

the items enumerated are in the nature of indicia of authority from a governmental unit to the

authorized person to pursue some endeavor."); *Goldrich*, 771 F.2d at 30 ("A credit guarantee is

not a license, permit, charter or franchise; nor is it in any way similar to those grants.").  The

Third Circuit in *Ayes* explained this conclusion is further supported by the fact that the rest of

section 525(a)'s text refers to discrimination in the *employment* context:

> Unfortunately for Appellants, the veteran guaranty entitlement bears no
> such resemblance to the items listed in § 525(a).  Licenses, permits,
> charters, and franchises are all governmental authorization that typically
> permit an individual to pursue some occupation or endeavor aimed at
> economic betterment.  For example, governmental entities issue real-
> estate, driver's, and medical licenses; building and business permits;
> corporate charters; and utility franchises.  All of these implicate
> "government's role as a gatekeeper in determining who may pursue
> certain livelihoods," and show that Congress intended § 525(a)'s
> protections to be "limited to situations sufficiently similar to *Perez*."  *This*
> *interpretation of "other similar grant" is supported by the remainder of*
> *§ 525(a), which forbids governmental discrimination in employment*
> *decisions based on an individual's discharge in bankruptcy.*

473 F.3d at 108-09 (emphasis added) (internal citations omitted).

For all of these reasons, Plaintiffs haves not established a likelihood of success on its

claims under section 525(a).

## III.    PLAINTIFF HAS NOT ESTABLISHED IRREPARABLE HARM.

Plaintiff fails to allege facts demonstrating that it would be irreparably injured by the

Administrator's action in the absence of prospective injunctive relief.  Instead, Plaintiff alleges

only the barest conclusory statements.  This does not suffice.

"A showing of irreparable harm is perhaps considered the single most important requirement in satisfying the standard." *Shady v.* Tyson, 5 F. Supp. 102, 105 (S.D.N.Y. 1998); *see Reuters Ltd. V. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir. 1990); 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.) (noting that "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered").  "Speculative injury does not constitute a showing of irreparable harm."  *Pub. Service Co. of New Hampshire v. Town of West Newbury*, 835 F.2d 380, 383 (1st Cir. 1987); *see also Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004) ("A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store."); *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996) ("[A] preliminary injunction is not warranted by a tenuous or overly speculative forecast of anticipated harm.").  Instead, "the threat of irreparable harm must be real and immediate."  *Biogen Idec MA Inc. v. Trustees of Columbia Univ. in City of N.Y.*, 332 F. Supp. 2d 286, 296 (D. Mass. 2004) (internal quotation marks omitted).

Plaintiffs are sympathic as front line medical facilities that serve rural areas during a pandameic.  Plaintiffs are struggling financially as demonstrated by their respective Ch 11 filings. Plaintiffs clearly can make a case that their respective financial conditions will benefit if they receive these PPP loans.  This is not sufficient evidence to support its claim of irreparable harm.  While both facilities have been impacted – Maine is one of the states that is reopening operations.[7]

---

[7] *See* https://www.nytimes.com/interactive/2020/us/states-reopen-map-coronavirus.html.

SBA has provided copies of weekly financial reports that both debtors prepare and provided to creditors. [SBA313 & SBA314]. A review of those weekly reports reflect that while there was an initial dip in income mid-March that they downward financial trend is reversing. Both Plaintiffs have received significant stimulus funds from federal and state programs. While Defendant is sympathetic to the fact that nearly all business are struggling as a result of the ongoing pandemic, Plaintiffs give no indication that they will be unable to weather the storm and improve its projections as the economy begins to reopen.

## IV.    THE BALANCE OF THE HARM AND THE PUBLIC INTEREST WEIGH AGAINST ENJOINING THE SBA.

Finally, to obtain the relief requested in these complaints against the United States, Plaintiffs must show that the sweeping injunction and declaratory relief would be in the public interest. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Plaintiffs cannot make that showing for at least three reasons: (1) the resolution of complex and competing policy interests at stake in administering the PPP is best left to Congress and the SBA; (2) the SBA has already determined that it should apply eligibility restrictions contrary to those Plaintiffs prefer when administering the PPP and Congress has determined that the SBA's implementation of the PPP should not be subject to injunction; and (3) the relief Plaintiffs seek has "potentially unknowable effects." *Profiles, Inc. v. Bank of Am. Corp.*, Civil Case No.: SAG-20-0894, 2020 WL 1849710, at *11 (D. Md. Apr. 13, 2020).

First, if granted, Plaintiffs proposed injunction would short-circuit the rapidly-evolving political and administrative landscape of responding to COVID-19. During this unprecedented situation, the public interest is best served by permitting the SBA to carry out the duties Congress assigned it, namely ensuring the swift flow of loan guarantees that Congress has deemed essential to protecting small businesses and the overall economy, in accordance with the

law.  As one court has already observed, "given the competing policy interests, the need to

balance the desire to assist the widest swath of small businesses with the need to incentivize

lender participation, and the overall fluidity of this epidemic, Congress is better positioned to

remedy any defects in the CARES Act, and to pass the supplemental legislation it believes best

aimed at ameliorating the effects of the COVID-19 crisis."  *Profiles*, 2020 WL 1894970, at *12.

In short, Plaintiffs' requested remedies "may undermine Congress's goal to maximize relief for

American small businesses" and therefore run directly counter to the public interest.  *Id.* at *11;

*see also Am. Ass'n of Political Consultants v. SBA*, Civil Case No. 20-970, 2020 WL 1935525, at

*7 (D.D.C. Apr. 21, 2020) (denying a TRO motion seeking to overturn the prohibition on

political or lobbying groups from receiving section 7(a) loans).

Second, imposing Plaintiffs requested injunction would reverse the SBA's stated policy

preference, which Congress chose to make immune from injunction.  The SBA has a clear policy

to exclude bankrupt entities from PPP lending because such lending "would present an

unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans."

Fourth Interim Final Rule, 85 Fed. Reg. at 23,451. [SBA311]. Plaintiffs wishe to replace this

judgment with its own policy preference.  But, as explained above, Congress chose to empower

the SBA to implement the PPP, thus its policy carries the force of law.  Congress also chose to

immunize the SBA from injunctive relief.  Issuing an injunction here would run directly against

that public policy, which provides further proof that the balance of the equities must be struck in

the Government's favor.  Thus, issuing the injunction Plaintiffs seek would represent precisely

the sort of interference with Defendant's statutory obligations that runs contrary to the public

interest.

Third, as another court has already explained, the broad injunctive relief Plaintiffs seek

could "have consequences reaching far beyond the litigants in this particular case." *Profiles, Inc.*,

2020 WL 1849710, at *11.  Its impacts would cost "valuable time" for both Congress and the

SBA to effectively respond to changing circumstances and for small businesses applying for

current or potential future PPP loans to receive funds.  *Id.*  In short, a TRO here would throw a

wrench into policymakers' evolving responses to the pandemic's economic fallout and would

adversely affect thousands of small businesses that need help now.  In these circumstances,

"[t]he proper balance between the competing and compelling public interests implicated in this

incredibly complex situation must be struck by the legislative branch." *Id.* at *4.  Under these

unprecedented circumstances, the Court should strike the balance in the United States' favor and

deny Plaintiffs unprecedented requests for a preliminary injunction.

## CONCLUSION

For the foregoing reasons, Plaintiffs request for a permanent injunction, declaratory

relief, damages and an order of mandamus should be denied.


Dated: May 22, 2020                                 Respectfully submitted,

                                                    JOSEPH H. HUNT
                                                    Assistant Attorney General

                                                    HALSEY B. FRANK
                                                    United States Attorney

                                                    JAMES D. CONCANNON
                                                    Assistant United States Attorney

                                                    /s/Dominique Sinesi
                                                    DOMINIQUE SINESI
                                                    Commercial Litigation Branch
                                                    Civil Division
                                                    United States Department of Justice

P.O. Box 875
Ben Franklin Station
Washington D.C. 20044
Tel. (202) 514-3368
Fax (202) 514-9163
Email: Dominique.Sinesi@usdoj.gov

ATTORNEYS FOR THE UNITED
STATES

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 22, 2020, I electronically filed the foregoing objection with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

/s/Dominique Sinesi

DOMINIQUE SINESI
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 875
Ben Franklin Station
Washington D.C. 20044
Tel. (202) 514-3368
Fax (202) 514-9163
Email: Dominique.Sinesi@usdoj.gov