**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>Penobscot Valley Hospital,<br><br>　　　　　Debtor | Chapter 11<br>Case No. 19-10034 |
| Penobscot Valley Hospital,<br><br>　　　　　Plaintiff<br>v.<br><br>Jovita Carranza, in her capacity as Administrator for the United States Small Business Administration,<br><br>　　　　　Defendant | Adv. Proc. No. 20-1005 |
| In re:<br><br>Calais Regional Hospital,<br><br>　　　　　Debtor | Chapter 11<br>Case No. 19-10486 |
| Calais Regional Hospital,<br><br>　　　　　Plaintiff<br>v.<br><br>Jovita Carranza, in her capacity as Administrator for the United States Small Business Administration,<br><br>　　　　　Defendant | Adv. Proc. No. 20-1006 |

**ORDER RESOLVING DISCOVERY DISPUTE AND SETTING HEARING**

On July 31, 2020, the District Court recommitted this proceeding to this Court with instructions to "consider the significance of the Miller Declaration in relation to the previously established administrative record and the other recent declaration or declarations prepared by

1

Miller." [Dkt. No. 78, p. 7.] In addition, the District Court authorized, but did not require, this Court to "receive other additional evidence if . . . necessary to resolve the discrepancy" between (a) the Miller Declaration filed by the defendant in the District Court in this proceeding and (b) a separate declaration prepared by Mr. Miller in similar litigation in the District of Vermont. Id. This Court is thus tasked with considering the administrative record, the declarations prepared by Mr. Miller, and any additional evidence necessary to resolve the "possible discrepancy" between Mr. Miller's declarations. Id. p. 6. After considering this material, the Court is to issue revised or additional findings regarding the reason or reasons offered by the defendant for the adoption of the bankruptcy exclusion, and to consider those findings in reaching conclusions of law "as to both the second step of the Chevron analysis and the 'arbitrary and capricious' analysis under State Farm." Id. p. 7. These instructions and binding caselaw necessarily inform the Court's views of the path forward in this proceeding and, more specifically, of the parties' disputes about discovery (which are described below).

In early August, after hearing from the parties at a status conference, this Court authorized limited discovery in the form of requests under Fed. R. Civ. P. 34, with the requests "tailored to identification of the administrative record, as well as other declarations prepared by Mr. Miller." [Dkt. No. 84, p. 2.] The plaintiffs did not ask for permission to undertake any other discovery, and no other discovery was authorized. On October 8, 2020, the Court conducted another status conference to determine whether discovery had been completed and to establish further procedures. See [Dkt. No. 86]. During that conference, it became apparent that the parties had disputes about discovery, and the Court ordered the parties to file a copy of the plaintiffs' Rule 34 requests and the defendant's objections. The defendant timely filed these documents. [Dkt. No. 90.] The plaintiffs have since filed a statement regarding discovery,

2

offering their view that the administrative record should include "all documents and materials directly or indirectly considered by agency decision-makers" and reserving the "right to seek to exclude the . . . Miller Declaration on the basis that it is not part of the existing administrative record." [Dkt. No. 91.]

First things first. The District Court has instructed this Court to consider the Miller Declaration and any other declarations prepared by Mr. Miller. For this reason, the Court will consider the Miller Declaration [Dkt. No. 90-1] and the Additional Miller Declaration [Dkt. No. 90-2]; neither of these documents will be excluded on the basis that they are not part of the administrative record. By making this ruling, the Court is not determining the weight to be accorded to, or the legal significance of, any part of the Miller Declaration or the Additional Miller Declaration. Rather, the Court is foreclosing any effort to exclude these documents because any such exclusion would run afoul of the District Court's recommittal instructions.

Next, a step back is in order. The circumstances of the parties' disagreement about discovery are unusual. The plaintiffs previously had the opportunity to conduct discovery, prior to trial. *See* [Dkt. No. 23]. The time for taking discovery was truncated, and trial preparations were streamlined to maximize the parties' chance of obtaining a prior decision prior to the expiration of the deadline for submitting PPP applications under the CARES Act. But the Court did not create that exigency, and the plaintiffs have not urged the Court to expand discovery at this juncture to make up for the time pressures that existed earlier in these proceedings. Instead, post-trial discovery was authorized on a limited basis to set the table for revised or additional proposed findings and conclusions consistent with the District Court's instructions. At the status conference in early October, the plaintiffs took the position that they were seeking either an order compelling discovery or an order excluding any additional evidence that might later be offered or

produced by the defendant. They also suggested that the discovery battle might be short-circuited by a stipulation that there are no other materials in the administrative record.

The plaintiffs have not filed a formal motion to compel discovery under Fed. R. Civ. P. 37, but the parties' disagreement about the scope of permissible discovery is apparent. To avoid additional delay, unnecessary proceedings, and further equivocation, the Court will tackle the dispute as though the plaintiffs had formally moved to compel the production of the documents they requested, to which the defendant has objected.

The defendant avers that it has already produced the administrative record, and that it consists of the components referenced in the Miller Declaration: (i) the CARES Act, Pub. L. 116-136, signed by the President on March 27, 2020; (ii) 13 C.F.R. 120.10; (iii) the official section 7(a) borrower application form (Form 1919); (iv) the PPP borrower application form (Form 2483); (v) the First Interim Final Rule posted to the SBA's website on April 2, 2020 and published in the Federal Register on April 15, 2020; and (vi) the Fourth Interim Final Rule posted to the SBA's website on April 24, 2020 and published in the Federal Register on April 28, 2020. At the status conference on October 8, the defendant represented that it had followed emergency rulemaking procedures in adopting the bankruptcy exclusion, and that "there is nothing else" in the administrative record.

The plaintiffs seem to believe that there must be more material. In their request for production, they seek "all important substantive information that was presented to, relied on (directly or indirectly), or reasonably available to the Administrator or other decision-maker within SBA when adopting or promulgating SBA Form 2483, SBA Form 2484, and SBA's Fourth Interim Final Rule[.]" [Dkt. No. 90-3, ¶ 1.] The plaintiffs also seek "all documents on which John A. Miller relied when preparing the Miller Declaration" and all documents on which

4

Mr. Miller relied when preparing any other declaration concerning the bankruptcy exclusion. Id. ¶¶ 5 & 7. The plaintiffs have offered to file a memorandum explaining how these alleged gaps in the record bear on the arbitrary and capricious analysis under State Farm. See [Dkt. No. 91]. In support of the notion that there must be more to the administrative record, the plaintiffs rely on a lengthy string citation to decisions from the Supreme Court, the First Circuit, the District Court, and other courts. See id.

Among other things, the plaintiffs cite Citizens to Preserve Overton Park, Inc. v. Volpe, which featured a decision by the Secretary of Transportation approving the construction of a multi-lane highway through a public park without making any formal findings that there were no feasible alternative routes and without a discussion of why design changes could not be made to reduce harm to the park. 401 U.S. 402, 407-08 (1971), *abrogated on other grounds* 430 U.S. 99 (1977). There is no suggestion that this decision by the Secretary was reached on an expedited timeframe. See id. The decision was, however, governed by specific directives in federal statutes providing that the Secretary could not approve of any project that required use of public parkland unless there were no feasible and prudent alternatives to the use of that land, and the project included all possible planning to minimize harm to the park. Id. at 411. When the decision was made, the Secretary compiled an administrative record. See id. at 419. But, when the decision was challenged in court, review was limited to litigation affidavits consisting solely of "post hoc rationalizations." Id. The Supreme Court concluded that it was "necessary to remand the case to the District Court for plenary review of the Secretary's decision"—review "based on the full administrative record that was before the Secretary at the time he made his decision." Id. at 420 (footnote omitted). The Court also suggested, in dicta, that if the record did not "disclose the factors that were considered or the Secretary's construction of the evidence" it

5

might be appropriate for the District Court to consider additional formal findings prepared by the Secretary, or to permit an examination of the decisionmakers themselves. Id.

The plaintiffs also look to Silva v. Lynn, 482 F.2d 1282 (1st Cir. 1973) to support the notion that the administrative record must include the materials they seek in discovery. In that case, the First Circuit ruled that the trial court had erred in refusing a request for production of the administrative record supporting an Environmental Impact Statement ("EIS"), a record containing the "detailed studies and background deliberation which form the basis of the final EIS." Id. at 1283. The Court remanded to the trial court with instructions to return the EIS to the agency to give the agency an opportunity to provide "more detailed reasons supporting its conclusions . . . and sufficient data to serve as a basis for these reasons." Id. at 1288.

In this Court's view, the bankruptcy exclusion and the record that the defendant has offered to support the exclusion bear little, if any, similarity to the agency actions and judicial review of those actions in Overton Park and Silva. In both of those cases, the trial courts reviewed the challenged agency actions without considering an existing administrative record and that review was reversed on appeal. Here, the defendant promulgated an application form and a rule excluding debtors in bankruptcy from participation in the PPP shortly after Congress passed the CARES Act. The defendant took these actions without providing notice and an opportunity for comment, per Congressional instructions to expedite the rulemaking process. See 15 U.S.C. § 9012. Given the compressed timeframe, it makes sense that the defendant would not have relied on any studies or similar materials when it adopted the bankruptcy exclusion. And, the plaintiffs have not identified the sort of materials or studies they believe the defendant would, or might, have relied on even if the rulemaking process had not been expedited. For its part, the defendant has represented that it did not, in fact, rely on any studies

6

in adopting the bankruptcy exclusion, and has indicated that all relevant, non-privileged materials have been produced. Under the circumstances, these assertions have more than an air of reasonableness.

The plaintiffs protest that they simply do not know whether the record is complete. But the defendant has repeatedly indicated—during hearings in court, and through Mr. Miller—that there is nothing else in the administrative record. In its response to the plaintiffs' request for production, the defendant repeatedly states that there are no other non-privileged materials in the administrative record. Under the caselaw that the plaintiffs cite, the defendant's designation of the record "is entitled to a presumption of administrative regularity" that "may be rebutted only upon clear evidence that the agency's designated record is not accurate and complete[.]" Me. v. McCarthy, No. 1:14-cv-00264-JDL, 2016 WL 6838221, at *1 (D. Me. Nov. 18, 2016) (quotation marks omitted); *see also* Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985) ("The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court."). No such clear evidence has emerged in this proceeding.

The other binding decision cited by the plaintiffs may loom large in the APA context generally but does not help them here. In Camp v. Pitts, the Supreme Court signaled that an agency's decision should "stand or fall" based on the agency's contemporaneous explanation bolstered by "such additional explanation of the reasons for the agency decision as may prove necessary" to effective judicial review. 411 U.S. 138, 143 (1973). The Court did not endorse discovery into the agency's internal, deliberative process to remedy a failure to explain administrative action, but instead suggested that the remedy for such failure would be to remand to the agency for further consideration. *See* id. Here, to the extent the plaintiffs seek discovery

7

into the defendant's deliberative, intra-agency records, that expedition is not well-founded; those materials are not a part of the administrative record. *See* McCarthy, 2016 WL 6838221, at *1 (suggesting that the administrative record may include "recommendations of an agency decision maker's subordinates" but not privileged, deliberative materials).

As the Supreme Court stated in Camp v. Pitts, the "focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." 411 U.S. at 142.

> In the event the administrative record is found inadequate for judicial review, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. Ideally, the agency—not the [trial] court—should be the body to augment the record. In the rare circumstances where remand to the agency is not appropriate, the administrative record may be supplemented if there is a strong showing of bad faith or improper behavior by agency decision makers. The administrative record may also be supplemented where there is a failure to explain administrative action as to frustrate effective judicial review.

McCarthy, 2016 WL 6838221, at *2 (quotation marks omitted) (citations omitted); *accord* Dep't of Commerce v. N.Y., 139 S. Ct. 2551, 2573 (2019) (explaining that the principle of confining judicial review to the existing administrative record "reflects the recognition that further judicial inquiry into executive motivation represents a substantial intrusion into the workings of another branch of Government and should normally be avoided") (quotation marks omitted).

The plaintiffs' Rule 34 requests could be viewed as attempts to supplement, rather than define, the administrative record. Even so viewed, those requests veer wide of the mark. This proceeding does not appear to meet any of the exceptions to the so-called "administrative record rule." *See* Murphy v. Comm'r of Internal Revenue, 469 F.3d 27, 31 (1st Cir. 2006) (identifying two exceptions to that rule). There has been no allegation or showing of bad faith or improper behavior by the defendant. *See* id. The plaintiffs have not made a showing that the defendant

8

intentionally or negligently excluded from the record material adverse to its position. *See* McCarthy, 2016 WL 6838221, at *2. Further, the defendant's relatively contemporaneous explanation for the bankruptcy exclusion is not so paltry as to impede judicial review. *See* Murphy, 469 F.3d at 31. The explanation offered may be curt, but it plainly indicated the reasons underlying the bankruptcy exclusion: the determination that "providing PPP loans to debtors in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans. In addition, the Bankruptcy Code does not require any person to make a loan or a financial accommodation to a debtor in bankruptcy." [Fourth Interim Final Rule at Dkt. No. 1-3.] The latter half of this explanation is consistent with 11 U.S.C. § 365(c)(2). That statute admits of no distinction between bankruptcy cases under different chapters or different types of cases under a particular chapter. To the extent that there is a discrepancy between the explanations later offered in the Miller Declaration and the Additional Miller Declaration, the Court is unpersuaded that any such discrepancy frustrates effective judicial review.

The validity of the bankruptcy exclusion under the APA and the Supreme Court's interpretations of the APA in Chevron and State Farm should stand or fall based on the relatively contemporaneous explanation offered by the defendant and the contents of the administrative record identified in the Miller Declaration. Because the District Court has instructed this Court to consider the Miller Declaration and the Additional Miller Declaration, the explanations offered there may also factor into further proposed findings and conclusions in relation to the viability of the bankruptcy exclusion under the APA. But the plaintiffs' efforts to augment the administrative record through discovery do not appear to be supported by the binding caselaw to which they refer, or by other caselaw from the Supreme Court and the First Circuit that this

Court has reviewed independently. For this reason, to the extent that the plaintiffs' efforts to secure additional discovery can be treated as a motion under Rule 37, that motion is denied without an award of fees or a protective order.

The Court will conduct a further hearing in these proceedings on November 6, 2020 at 9:30 a.m. The hearing will take place by videoconference solution. The plaintiffs' counsel, the defendant's counsel, and any other party wishing to participate in or observe the hearing must contact Judge Fagone's paralegal, Mary Withee, no later than 12:00 p.m. on November 3, 2020 to obtain the information necessary to participate or observe, and to engage in any necessary testing of the videoconference technology.

At the hearing, the parties must be prepared to identify, with specificity, any further or amended proposed findings the Court should issue in light of the Miller Declaration and the Additional Miller Declaration, and any discrepancy between those two declarations. The parties should also be prepared to make arguments in support of their respective positions about the viability of the bankruptcy exclusion under the second step of the Chevron analysis and the arbitrary and capricious analysis outlined in State Farm.

In APA litigation, context matters. The caselaw is unruly. As such, oral citations to nonbinding decisions are generally discouraged, particularly if unaccompanied by an explanation of why the decisions are unpersuasive. The parties are encouraged to consider whether the holding of a decision from the Supreme Court or the First Circuit was rendered in circumstances sufficiently analogous to warrant discussion. Ultimately, although caselaw may chart the path for analysis under the APA, the analysis is always applied to the specific circumstances of the challenged agency action, and the circumstances here are unique. Up to this point, neither the plaintiffs nor the defendant have squarely focused on the factors "relevant" to the defendant's

decision to exclude debtors in bankruptcy from participation in the PPP.  See Motor Vehicle Mfrs. Ass'n. of U.S., Inc. v. State Farm Mutual Auto. Ins. Co., 463 U.S. 29, 43 (1983) (articulating the arbitrary and capricious standard); *see also* Overton Park, 401 U.S. at 823-24 (explaining that a determination under the APA requires the court "to consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment").

The Court also encourages the parties to share their views of the appropriate remedy for a violation of the APA if one occurred here.  If the plaintiffs persuade the Court that the defendant's explanation is inadequate to support the bankruptcy exclusion, the Court is likely to recommend that the District Court remand to the defendant to either provide additional explanation for the exclusion or to take some other action.  If the plaintiffs believe that some other remedy would be appropriate, they should identify that remedy and cite binding caselaw in support of that other remedy.

Date: October 23, 2020

_____
Michael A. Fagone
United States Bankruptcy Judge
District of Maine